**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTOPHER M. WARMAN; TRUST FOR FAMILY OF CHRISTOPHER WARMAN; CHOCOLATE MOONSHINE, LLC, | Civil Action<br><br>No. _____ |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | *Electronically Filed* |
| LOCAL YOKELS FUDGE, LLC; CHRISTINE FALVO; CHARLES BRIAN GRIFFIN; DONALD KONIECZNY; CM CHOCOLATIER, LLC, | |
| Defendants. | |

**COMPLAINT**

Plaintiffs, Christopher M. Warman, ("Warman"), Trust for Family of Christopher Warman, ("Trust") and Chocolate Moonshine, LLC ("Moonshine"), through its undersigned counsel, alleges the following in its Complaint against Defendants, Local Yokels Fudge, LLC ("Yokels"), Christine Falvo ("Falvo"), Charles Brian Griffin ("Griffin"), Donald Konieczny ("Konieczny"), and CM Chocolatier, LLC ("Chocolatier").

**PRELIMINARY STATEMENT**

1.       The Trust is the owner a valuable trade secret recipe that has been successfully enforced twice in Pennsylvania state courts (the "trade secret").

2.       Moonshine has the exclusive enforcement rights to the Trademark "CHOCOLATE MOONSHINE" from an agreement from the registered trademark owner.

3. Warman, trustee, of The Trust and the owner and manager of Chocolate Moonshine LLC, on behalf the of Trust licensed Christine Falvo, his wife who filed for divorce, to use the trade secret and licensed the trademark "CHOCOLATE MOONSHINE" to his son's and Griffin's company Chocolatier to assist the family in making money.

4. Warman also provided Chocolatier with his business contacts and allowed them to establish themselves as the sole seller of the trade secret fudge under the brand "CHOCOLATE MOONSHINE" at events and other locations that he gave to them.

5. Falvo, Chocolatier, Yokels, Griffin, and Konieczny are now conspiring to take the business, infringe the trademark, and misappropriate the trade secret.

## THE PARTIES

6. Plaintiff, Warman, is an individual that resides at 193 Birch Cr., Pittsburgh, PA 15237.

7. Plaintiff, Trust, is a trust with a mailing address at 1911 Leesburg Grove City Road, Suite 235, Grove City, PA 16127.

8. Plaintiff, Moonshine, is a Pennsylvania Limited Liability Company with a principal place of business at 1911 Leesburg Grove City Road, Suite 235, Grove City, PA 16127.

9. Defendant, Chocolatier, is a Pennsylvania Limited Liability Company with a principal place of business at 3703 Butler St., Pittsburgh, PA 15201.

10. Defendant, Yokels, is a Pennsylvania Limited Liability Company with a principal place of business at 1622 William Flynn Hwy, Glenshaw, PA 15116.

2

11. Defendant, Falvo, is an individual that resides at 5001 Essex Ct., Pittsburgh, PA 15237.

12. Upon information and belief, Defendant, Griffin, is an individual that resides at 2317 Jane Street, Pittsburgh, PA 15203. Griffin also operates out of 1622 William Flynn Hwy, Glenshaw, PA 15116 and 3703 Butler St., Pittsburgh, PA 15116

13. Defendant, Konieczny, is an individual that resides at 430 Carters Grove, Gibsonia, PA 15044.

## **JURISDICTION**

14. This is an action for: (i) misappropriation of trade Secrets pursuant to the Defense of Trade Secret Act 18 U.S.C. §§ 1836, *et seq.*; (ii) Trademark Infringement under 15 USC 1125; (iii) misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. § 5301 through 12 Pa. C.S. § 5308; (v) tortious interference under Pennsylvania law; (vii) civil conspiracy under Pennsylvania Law; (viii) unjust enrichment, and breach of contract under Pennsylvania Law.

15. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

## **VENUE**

16. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c). Defendants reside in this district and a substantial part of the events and transactions occurred in this district.

## BACKGROUND

17. Warman developed the trade secret and at all times kept it confidential. He retained procedures that the Superior Court found to be sufficient to establish and maintain a trade secret.

18. Warman gave Falvo a license to use the trade secret formula for the fudge from the Trust. Falvo was supposed to keep the recipe a secret and was to use it to provide for Warman's daughter Elle (one of the beneficiaries of the Trust). Eventually, as business picked up, Falvo was to pay a royalty on the fudge that was sold.

19. Warman also makes fudge using the recipe and sells it under the Chocolate Moonshine trademark.

20. Warman gave Chocolatier a license to use the Chocolate Moonshine trademark from Chocolate Moonshine, LLC on fudge made using the trade secret.

21. Chocolatier purchased fudge from Falvo and confirmed the use of the trade secret.

22. Warman gave Chocolatier his business contacts for outlets to sell the Chocolate Moonshine trademarked fudge.

23. Griffin was the main person who used Warman's outlets.

24. The business provided by Warman proved to be very successful and over a million dollars of fudge has been sold.

25. In 2019, Warman asked Falvo to begin paying a royalty as agreed. Falvo declined.

26. Falvo now for the first time has represented that she is not using the trade secret but something different, which if true, causes a significant trademark infringement. However, upon information and belief Falvo is still using the trade secret.

27. Falvo gave the trade secret to Yokels and Konieczny. Together, as part of Yokels and with Konieczny, Falvo and Konieczny began to conspire to try to interfere with Warman's business relationships and misappropriate the trade secret for their own use.

28. Falvo and Konieczny met with individuals that worked with Warman and told them that Warman was crazy and that there was no trade secret. She told them she had a very good plan to take all of the business away from Warman. Falvo and Konieczny made false and misleading statements about Warman and his business.

29. Falvo and Konieczny incorrectly convinced Griffin that Warman, Trust, and Moonshine have no protectable rights.

30. Trust and Moonshine sent Falvo a letter on April 30, 2019 informing her of her violations and asking to amicably resolve the matter.

31. Trust and Moonshine sent Chocolatier and Griffin a letter explaining the ramifications of not buying authorized fudge.

32. Falvo, Chocolatier, and Griffin have conspired to continue to sell unauthorized fudge under the Chocolate Moonshine name to the outlets and customers Warman provided.

## CAUSES OF ACTION

## COUNT I

## <u>TRADE SECRET MISAPPROPRIATION IN THE DTSA BY FALVO AND YOKELS</u>

33. Paragraphs 1-32 of this Complaint are incorporated by reference as if fully set forth herein.

34. The Trust owns a trade secret recipe for fudge. That recipe has been found to be a protected trade secret enforced in *Christopher M's Hand Poured Fudge, Inc. v. Hennon*, 699 A.2d 1272 (Pa. Super. Ct. 1997); *Trust for Family of Christopher M. Warman v. Three Rivers Confections, LLC*, No. 1492 WDA 2012 (Pa. Super. Aug. 27, 2013).

35. Falvo knew the recipe was a trade secret.

36. Falvo was aware of the economic value of the trade secret and was only able to generate money through its use.

37. Upon information and belief, Falvo continues to use the trade secret recipe even after her permission to use it had been revoked.

38. Falvo disclosed the trade secret to Yokels and is permitting the trade secret recipe to be used by Yokels.

39. The fudge made from the trade secret by Yokels is transported in interstate commerce.

## COUNT II

### TRADE SECRET MISAPPROPRIATION – PA UNIFORM TRADE SECRETS ACT BY FALVO , YOKELS, and Konieczny

40. Paragraphs 1-39 of this Complaint are incorporated by reference as if fully set forth herein.

41. The Trust owns a trade secret that has been enforced twice previously.

42. Falvo was aware of the trade secret and the findings by the Courts of a protectable trade secret.

43. Falvo's permission to use the trade secret was revoked.

44. Falvo not only continues to use the trade secret but, upon information and belief, has disclosed to Yokels and Konieczny.

45. Yokels and Konieczny are aware of the trade secret nature of the recipe.

46. Yokels, Flavo, and Konieczny continues to use the trade secret.

## COUNT III

### CONTRIBUTORY TRADEMARK INFRINGEMENT BY FALVO, YOKELS, AND KONIECZNY

47. Paragraphs 1-46 of this Complaint are incorporated by reference as if fully set forth herein.

48. Falvo and Yokels know the Chocolate Moonshine trademark and brand and that authorized fudge is required to be sold under the name.

49. Upon information and belief Falvo and Yokels have promised Chocolatier and Griffin significant financial reward for continuing to sell fudge made by them under the Chocolate Moonshine name.

50. Falvo and Yokels are intentionally inducing Chocolatier and Griffin to sell unauthorized fudge under the Chocolate Moonshine name.

## COUNT IV

### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP BY FALVO AND YOKELS

51. Paragraphs 1-50 of this Complaint are incorporated by reference as if fully set forth herein.

52. Falvo and Yokels are aware of the license between Moonshine and Chocolatier.

53. Falvo and Yokels have intentionally for their own benefit caused Chocolatier to breach its license agreement that damages Moonshine.

## COUNT V

### TRADEMARK INFRINGEMENT BY CHOCOLATIER AND GRIFFIN

54. Paragraphs 1-53 of this Complaint are incorporated by reference as if fully set forth herein.

55. Chocolatier and Griffin are aware that Falvo, Yokels, and Konieczny are not authorized to use the trade secret to make fudge and not authorized providers of fudge.

56. Chocolatier and Griffin sell unauthorized Fudge and, upon information and belief, candy under the Chocolate Moonshine name creating a likelihood of confusion in the market place.

## COUNT VI

### TORTIOUS INTERFERENCE BY CHOCOLATIER AND GRIFFIN

57. Paragraphs 1-56 of this Complaint are incorporated by reference as if fully set forth herein.

58. Griffin and Chocolatier provide fudge and other candies under the "CHOCOLATE MOONSHINE" brand to certain outlets. A great number of those outlets were provided by Warman. Those outlets only allow one seller.

59. Griffin and Chocolatier are purposely continuing to be the only seller at those outlets using the CHOCOLATE MOONSHINE trademark, knowing it's not authorized fudge.

60. Griffin and Chocolatier, without justification, are damaging Warman and Moonshine. Griffin's and Chocolatier's actions are preventing Plaintiffs from getting the proper authorized fudge and candy in those outlets and preventing sales.

## COUNT VII

### BREACH OF CONTRACT BY CHOCOLATIER

61. Paragraphs 1-60 of this Complaint are incorporated by reference as if fully set forth herein.

62. Chocolatier has a license to sell authorized fudge and candy under the "CHOCOLATE MOONSHINE" name.

63. Chocolatier is breaching that contract by selling unauthorized fudge under the "CHOCOLATE MOONSHINE" trademark.

## COUNT VIII

## **BREACH OF CONTRACT BY FALVO**

64. Paragraphs 1-63 of this Complaint are incorporated by reference as if fully set forth herein.

**65.** Falvo had a license from Trust to use the trade secret recipe.

**66.** Falvo failed to pay the required license fee.

67. Falvo continues to use the trade secret recipe in violation of the agreement.

## COUNT IX

## **UNJUST ENRICHMENT**

68. Paragraphs 1-67 of this Complaint are incorporated by reference as if fully set forth herein.

69. Plaintiffs have involuntarily conferred a benefit on Defendants of which Defendants have knowledge.

70. Trust has conferred the trade secret on Defendants. Defendants have knowledge of the trade secret and the rights.

71. Defendants are retaining and taking the benefit conferred upon them without providing any compensation to Plaintiffs for the same.

72. The circumstances are such that it would be inequitable for Defendants to retain the benefit of the use of the trade secret and trademark.

## COUNT X

## CIVIL CONSPIRACY

73. Paragraphs 1-72 of this Complaint are incorporated by reference as if fully set forth herein.

74. Plaintiffs conspired together in order to take over the Plaintiff's business.

75. Falvo, Yokels, and Koniecny promised Griffin a large amount of the business if Griffin would stick with Falvo and Yokels in violation of his agreement and the trademark license.

76. Plaintiffs have been damaged by these actions.

## COUNT XI

## DEFAMATION

77. Paragraphs 1-76 are incorporated by reference as if fully set forth herein.

78. Mr. Warman is a private figure.

79. Within the last year, Falvo, Yokels, and Konieczny, have made defamatory statements about Warman and Moonshine.  Those statements, include that he is crazy, he is a bad person, he is a criminal, that there are no intellectual property rights, that he lies, that his business is about to close, that he can't make fudge, that he won't be able to fill orders, that he is abusive, that he is mentally unstable.

80. Those false statements have been made to employees, customers, and business partners.  They have harmed Mr. Warman and taken business from him.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for relief as follows:

1.  An injunction enjoining any defendants, their agents, their employees, their attorneys, their successors, their assigns, their affiliates, their entities owned and controlled by any defendants, and all those acting in concert or participation with any defendants, and each of them who receives notice directly or otherwise of such injunction from:

    a.  Selling, distributing, manufacturing, importing, offering for sale, advertising, or promoting any product bearing any simulation, reproduction, copy or colorable imitation of the "Chocolate Moonshine Mark" such that it is likely to deceive, mislead, or confuse the public into believing that Defendants' products in any way originate with, are sanctioned by, or are affiliated with Plaintiffs;

    b.  otherwise competing unfairly with Plaintiffs in any manner;

    c.  instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities that could cause harm to the mark or cause confusion;

    d.  disposing of, destroying, altering, moving, removing, concealing, tampering with or in any manner secreting any physical evidence or documents(including computer records) of any kind, including invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receipt, acquisition, importation, purchase, sale, offer for sale, and/or distribution of any merchandise infringing the "CHOCOLATE MOONSHINE" trademark or reproduction, counterfeit, copy or colorable imitation thereof;

  e.  directing that Defendants make available for review, inspection and copying all books, records (including all hard drives on computers used for business purposes, including servers, as well as all computer disks and back up disks) and other documents and things concerning all transactions relating to the purchase or sale of infringing product or any other products incorporating a simulation, reproduction, counterfeit, copy or colorable imitation of infringing products; and

  f.  directing that any Defendants recall from all distributors, retailers or other recipients any and all infringing products, direct that any Defendants recall from all manufacturers any and all tools used to manufacture the infringing products; and that any Defendants shall deliver such goods, tools up to Plaintiff's counsel for destruction at Defendants' cost.

2. An Injunction preventing Defendants from making and selling any fudge;

3. A judgment of trademark infringement by Defendants;

4. A judgment of trade secret misappropriation by Falvo and Yokels;

5. A judgment of breach of contract by Defendants;

6. A judgment that Defendants actions are exceptional;

7. A judgment that Defendants have been unjustly enriched;

8. A judgment and order requiring Defendants to pay Plaintiffs three times any profits, supplemental damages, or a reasonable royalty from any infringement up until entry of the final judgment, with an accounting, as needed;

9. A judgment and an order requiring Defendants to pay Plaintiffs pre-judgment and post-judgment interest on any damages or profits awarded;

10. An award of Plaintiffs' attorney's fees for bringing and prosecuting this action;

11. An award of Plaintiffs' costs and expenses incurred in bringing and prosecuting this action; and

12. Any other relief that may be requested or granted by the Court.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury for all issues triable by a jury.

Respectfully submitted,

**THE WEBB LAW FIRM**

Dated: September 24, 2019

s/ *John C. Thomas III*
John C. Thomas, III (PA ID No. 85532)

One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815
412.471.4094 (fax)
jthomas@webblaw.com

*Attorney for Plaintiffs*