IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER M. WARMAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action 19-1224 |
| | ) | Magistrate Judge Dodge |
| vs. | ) | |
| | ) | |
| LOCAL YOKELS FUDGE, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiffs Christopher M. Warman ("Warman"), the Trust for Family of Christopher Warman ("Trust") and Chocolate Moonshine, LLC ("Moonshine") have brought this action against Defendants Local Yokels Fudge, LLC ("Local Yokels"), Christine Falvo ("Falvo"), Charles Brian Griffin ("Griffin"), Donald Konieczny ("Konieczny") and CM Chocolatier, LLC ("Chocolatier"). The Amended Complaint asserts claims of trade secret misappropriation under federal and state law, as well as federal claims of trademark infringement and copyright infringement, and state law claims of tortious interference with contractual relations, breach of contract, unjust enrichment, civil conspiracy and defamation. These claims arise out of a recipe for making fudge.

Defendants deny Plaintiffs' allegations and have asserted counterclaims against them. These counterclaims include breach of contract, conspiracy, tortious interference with contract or prospective beneficial commercial relationship, unfair competition and fraud. Defendants also seek a declaratory judgment and contend that because certain specific claims were asserted by Plaintiffs in bad faith, they are entitled to attorney's fees.

Currently pending before the Court is Plaintiffs' Partial Motion to Dismiss Counts III, IV,

V, VI, VII, and IX of Defendants' counterclaims (ECF No. 56). For the reasons that follow, Plaintiffs' motion will be granted in part. Count IX will be dismissed without prejudice with leave to amend, while Counterclaims IV, V, VI and VII will be dismissed without prejudice as explained below. Plaintiffs' motion will be denied with respect to Counterclaim III.

## I.   Procedural History

Plaintiffs commenced this action in September 2019 and subsequently filed an Amended Complaint on August 27, 2020 (ECF No. 51). Federal question jurisdiction, 28 U.S.C. §§ 1331, 1338, is invoked based on the trade secret misappropriation, trademark and copyright claims, and supplemental jurisdiction is asserted over the state law claims, 28 U.S.C. § 1367. The Amended Complaint alleges thirteen counts, including claims of trade secret misappropriation in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1831-39 ("DTSA") and the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. §§ 5301-08 ("PUTSA"); contributory trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125; tortious interference with contractual relations by Falvo and Local Yokels and by Griffin and Chocolatier; trademark infringement; breach of contract by Chocolatier and Falvo; unjust enrichment; civil conspiracy; defamation; and contributory copyright infringement and copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501.

On September 17, 2020, Defendants filed their Third Amended Answer, New Matter and Counterclaims to the Amended Complaint (ECF No. 52).[1] This pleading includes the following counterclaims: breach of contract (Count I); conspiracy (Count II); tortious interference (Count III); bad faith assertion of the PUTSA claim (Count IV); bad faith assertion of the DTSA claim

---

[1] The pleading is titled "Third Amended Answer, New Matter and Counterclaims" because some of the defendants had already filed an Answer (ECF No. 18), Amended Answer (ECF No. 23) and a Second Amended Answer (ECF No. 41).

(Count V); attorney's fees for the prevailing party in a trademark infringement case (Count VI); attorney's fees pursuant to 17 U.S.C. § 505 (Count VII); "unfair competition, false designation of origin passing off" (Count VIII); fraud (Count IX); and a claim seeking a "declaratory judgment joint ownership of copyright" (Count X).

Plaintiffs subsequently filed a Partial Motion to Dismiss Counterclaims III, IV, V, VI, VII and IX (ECF No. 56), which has been fully briefed (ECF Nos. 57, 61, 64, 65).

## II. Factual Allegations[2]

Plaintiffs' claims arise out of a dispute relating to a recipe for making fudge. According to the Amended Complaint, Plaintiff Warman developed this recipe, which is a trade secret owned by Moonshine. Moonshine is a company owned by the Trust and Warman. Warman licensed the recipe to his now ex-wife, Falvo, who refused to pay royalties for the license and gave the recipe to Local Yokels and Konieczny, who conspired to interfere with Warman's business relationships and misappropriate the trade secret. According to Plaintiffs, Warman also licensed the trademark to Griffin and Chocolatier, a company owned by his son ("Warman Jr."), but Griffin and Chocolatier have infringed the trademark.

As set forth in their Third Amended Answer, New Matter and Counterclaims, Defendants allege that in the 1980s, Warman purchased a fudge recipe from a person who owned a fudge manufacturing business in Maine. Defendants contend that this fudge recipe was available elsewhere and is not a trade secret for several reasons. First, the person who sold the recipe to Warman continued to use it and had the right and ability to make it available or known to others. (TAA ¶¶ 92-94.) In addition, Warman established and operated a company called "Christopher

---

[2] These allegations are taken from the Third Amended Answer ("TAA") because they are the ones being challenged by Plaintiffs in their motion to dismiss. Only those facts relevant to the pending motion are discussed herein.

M's Hand Poured Fudge, Inc." ("Christopher M's"). Alexander Weiner ("Weiner") became a shareholder and member of the board of directors of Christopher M's but never signed a confidentiality agreement. Later, when Christopher M's filed for bankruptcy, Weiner purchased the assets, including all trademarks and good will, and Warman taught Weiner how to manufacture fudge in accordance with the formula previously used by Christopher M's. (*Id.* ¶¶ 103-10.)

Christopher M's sold fudge to Hershey's, but Hershey's did not pay any royalties to Warman or the Trust because Hershey's does not pay royalties for recipes as they are so easy to reverse engineer. Moreover, Hershey's printed its original fudge recipe on its box of cocoa powder which it sold for use in the making of fudge. (*Id.* ¶¶ 111-14.) Weiner continued to manufacture fudge for Hershey's using the same formula and subsequent modifications of the formula, which he did through a company he started by the name of Sweet Deal. (*Id.* ¶¶ 115-19.)

Several employees also knew the recipe which Christopher M's used to make fudge, and when they left the company, they went into the fudge business and used the same recipe. (*Id.* ¶¶ 95-102.)

Warman also verbally gave Falvo the rights to the formula in 1996 when they were married. (*Id.* ¶¶ 95-98.) Warman and Falvo later jointly formed and operated a business which was eventually reorganized as Fudgie Wudgie, L.P. Warman had no ownership interest in this entity or its predecessors (*Id.* ¶¶ 129-34.) With Warman's knowledge, the alleged trade secret recipe has also been a matter of public record on the docket of the Court of Common Pleas of Allegheny County since June 2, 2015. (*Id.* ¶¶ 120-22.)

Thus, Defendants allege, the fudge recipe is not a trade secret.

Other facts alleged in the Third Amended Answer, New Matter and Counterclaims are relevant to resolving the partial motion to dismiss. Defendant Konieczny learned the recipe while

he was a cook for Fudgie Wudgie. He signed a confidentiality agreement with Fudgie Wudgie but was never told there was a trade secret recipe. (*Id.* ¶¶ 135-39.)

Fudgie Wudgie's defaulted loans were eventually purchased by  a company called Three Rivers. (*Id.* ¶¶ 140-46.) Three Rivers also obtained its collateral, including trademarks and trade secrets. Three Rivers used a formula which it derived in part at least from Weiner and continued to use the formula until it went out of business. Falvo, who was the 80% owner of Fudgie Wudgie and personal guarantor of its debts, obtained and retained the right to use the recipe being used by Fudgie Wudgie. In addition, Defendants allege that Falvo contributed to changes in the recipe after she and Warman were married and while working with Fudgie Wudgie, and any change in the recipe during her marriage to Warman in 1996 became marital property to which she was entitled. (*Id.* ¶¶ 147-52.)

Defendant Griffin was employed by Fudgie Wudgie, where he learned the recipe. (*Id.* ¶¶ 156-59.) He was never required to sign any confidentiality agreement or restrictive covenant and was never told that the fudge recipe was a trade secret. In April 2017, Griffin and Warman Jr. formed Defendant Chocolatier pursuant to a Limited Liability Company Agreement. Griffin contributed $1,000 in exchange for a 40% share of Chocolatier and Warman Jr., who received a 60% share, contributed $1,000 plus "Intellectual Property." This included the right to use the Chocolate Moonshine trademark to sell fudge and other candy to the general public, as well as marketing materials, including printed materials and photographs of the products which Chocolate Moonshine would sell. While the right to use the Chocolate Moonshine trademark was non-exclusive, it was not terminable so long as Chocolatier remained in the fudge-selling business. (*Id.* ¶¶ 160-70 & Exs. A, B.)

Warman Jr. represented to Griffin and Griffin confirmed that Warman Jr. was the owner

of the Chocolate Moonshine trademark. On June 13, 2017, Warman Jr. registered the name "Chocolate Moonshine" as a fictitious name under which Chocolatier would do business. According to Defendants, Plaintiff Warman consented to the filing of the fictitious name application. (*Id.* ¶¶ 171-72 & Exs. C, D.)

Warman Jr. and Griffin arranged with Defendant Local Yokels to manufacture fudge for sale by Chocolatier to the general public. Falvo and Konieczny agreed to provide free space in the premises of Local Yokels for Chocolatier to conduct business, which included storing and shipping the fudge manufactured by Local Yokels. Plaintiff Warman approved of this business plan. There was no agreement between any of the Plaintiffs and Griffin or Chocolatier that the use by Chocolatier of the Chocolate Moonshine trademark was conditioned on the sale of "authorized" fudge or that the fudge sold using the trademark was required to be manufactured by any particular fudge manufacturer. (*Id.* ¶¶ 173-77.) According to Defendants, Griffin or Chocolatier never agreed that they were required to compensate Warman, the Trust or Chocolate Moonshine as a result of sales leads given to Griffin by Warman. (*Id.* ¶¶ 178-80.)

On or about June 26, 2019, however, Warman advised Griffin that the trademark Chocolate Moonshine had been placed in a trust and that Griffin, as well as his associates and employees, were prohibited from selling products under the Chocolate Moonshine brand. Among other things, Warman took the position that Chocolate Moonshine was the only authorized producer of the fudge. (*Id.* ¶¶ 183-84.)

Warman Jr. had not advised Griffin that he had transferred either his ownership or control of the Chocolate Moonshine trademark to Warman or to a trust. Griffin was unaware that Warman Jr. and Warman were conspiring to interfere with Chocolatier's ability to sell fudge to the general public. (*Id.* ¶¶ 185-86.)  It was not until September 26, 2019 that Warman Jr. represented that the

agreement and license claimed by Warman did, in fact, exist. However, the only documents Griffin received consisted of a copy of what appears to be a first page of a Trademark License and Enforcement Agreement with an effective date of March 7, 2019 (approximately one month prior to the filing of the LLC registration), and photographs of pages which appeared to be portions of a draft agreement and a separate signature page. (*Id.* ¶¶ 188-93 & Exs. G, H.)

Defendants contend that by giving to his father the right to terminate the right of Chocolatier to use the Chocolate Moonshine trademark, Warman Jr. breached the Chocolatier Limited Liability Agreement as well as his fiduciary duties to Griffin. (*Id.* ¶¶ 194-96.)

In 2017, during the relationship between Warman Jr. and Griffin as owners of Chocolatier, Warman Jr. enlisted the assistance of Falvo to develop a website to publicize and advertise the fudge which he and Griffin were going to sell through Chocolate Moonshine. Falvo provided samples of the fudge and candy products manufactured by Local Yokels and assisted Warman Jr. in arranging them so that they could be photographed by a professional photographer and displayed on the Chocolate Moonshine website. Some of these photographs were adapted into boards and provided to Griffin for use in displays at events where they sold fudge. (*Id.* ¶¶ 197-201 & Ex. I.)

In June 2017, Warman Jr. emailed to Griffin a price board which had been created for use by Chocolatier in the sale of fudge and included some photos. Defendants believed at the time that any copyrights in the photographs belonged to the photographer. Apparently, sometime prior to April 6, 2020, Warman obtained a copyright for the photographs directly from the photographer and filed an application for a copyright registration. Plaintiffs never provided notice to Defendants that the Trust claimed to own copyrights to the photographs or demanded that Defendants cease using the photographs before they asserted a claim of copyright registration. (*Id.* ¶¶ 202-07 & Ex. J.)

III.    **Standard of Review**

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the defendant, a court finds that defendant's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires the defendant to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Allegations in counterclaims are held to the same pleading standards as allegations in complaints. *See Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 898 (E.D. Pa. 2011).

As noted by the Court of Appeals for the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a Rule 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

IV.    **Analysis**

A.    Attorney's Fees as Independent Claims

Counterclaims IV, V, VI and VII all seek a statutory award of attorney's fees and under

8

the relevant statutes, are only available to the prevailing party. *See* 12 Pa. C.S. § 5305 (PUTSA); 18 U.S.C. § 1836(b)(3)(D) (DTSA); 15 U.S.C. § 1117(a) (trademark infringement); 17 U.S.C. § 505 (copyright infringement). Plaintiffs argue that these claims are not causes of action, but rather, are properly set forth in a prayer for relief.

Claims for attorney's fees under these statutes do not constitute an independent cause of action. *See Harriott v. Bank of Am. Home Loans*, 2013 WL 4812461, at *7 (M.D. Pa. Sept. 9, 2013). *See* Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."); *Peek v. Whittaker*, 2014 WL 2154965, at *8 (W.D. Pa. May 22, 2014) (Hornak, C.J.) ("Plaintiffs have not pointed the Court to any case law indicating that Section 5305 creates a standalone cause of action ... and the Court has not located any such cases in its own research. Instead, courts have routinely considered Section 5305 claims on a motion following either summary judgment or trial....").

In opposing Plaintiffs' motion regarding this issue, Defendants cite a decision in which the court found that because the defendant asserted a defense that a PUTSA claim had been filed in bad faith, discovery about this issue "may also be relevant to their claim for attorneys' fee." *Avanti Wind Sys., Inc. v. Shatell*, 2015 WL 1800890, at *2 (W.D. Pa. Apr. 16, 2015); *see also Krafft v. Downey*, 68 A.3d 329 (Pa. Super. 2013) (reversing trial court denial of motion for attorney's fees made by defendant in response to a bad-faith PUTSA claim). However, these cases do not hold that a request for attorney's fees under PUTSA (or any of the other bases asserted by Defendants) states an independent cause of action.

Defendants also rely upon Federal Rule of Civil Procedure 8(c), which provides that "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court

must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." Fed. R. Civ. P. 8(c)(2). However, a request for attorney's fees is neither an affirmative defense nor a general defense. An affirmative defense is "an assertion raising new facts and arguments that, if proven, defeat the plaintiff's claim even if the allegations in her complaint are true." *Sterten v. Option One Mtg. Corp.*, 479 F. Supp. 2d 479, 482-83 (E.D. Pa. 2007) (citation omitted). An affirmative defense excuses the defendant's conduct even if the plaintiff is able to establish a prima facie case, while a general defense negates an element of plaintiff's prima facie case. *See Donohoe v. Am. Isuzu Motors, Inc.*, 155 F.R.D. 515, 518 (M.D. Pa. 1994). A request for attorney's fees does not constitute either a general defense or an affirmative defense. *See Schrad v. Radnor Twp. Sch. Dist.*, 2017 WL 4310258, at *3 (E.D. Pa. Sept. 28, 2017) (attorney's fee requests in IDEA case were not affirmative defenses, but denials that the plaintiffs had actually proven the elements of their prima facie case).

Defendants alternatively assert that if their counterclaims for attorney's fees are dismissed, it should be without prejudice to their right to move for attorney's fees pursuant to Fed. R. Civ. P. 54. *See Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 456 (E.D. Pa. 2014). The Court agrees. Therefore, Counterclaims IV, V, VI and VII will be dismissed without prejudice to Defendants' right to seek attorney's fees if and when they are prevailing parties.

B. Tortious Interference Claim

Plaintiffs contend that Defendants' allegations that Warman and Moonshine tortiously interfered with the contractual relationship or the prospective beneficial commercial relationship between Local Yokels and Chocolatier fails to state a claim upon which relief may be granted.

The elements for a claim of tortious interference are derived from the Restatement (Second) of Torts § 766, which has been adopted in Pennsylvania. *See Adler, Barish, Daniels, Levin and*

*Creskoff v. Epstein*, 393 A.2d 1175, 1183-84 (Pa. 1978). To state a claim for tortious interference, a plaintiff must allege:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*CGB Occupational Therapy, Inc., v. RHA Health Servs., Inc.*, 357 F.3d 375, 384 (3d Cir. 2004) (citation omitted).

Plaintiffs contend that Defendants fail to plead facts to support the existence of a contractual relationship, as well as any purposeful action on the part of Plaintiffs, the absence of privilege or justification on the part of Plaintiffs and how Defendants were actually damaged. In their reply brief, however, they assert only that the tortious interference claim lacks two of the required elements: lack of privilege and damages.

With respect to the privilege issue, Plaintiffs contend that Local Yokels has asserted no facts from which to conclude that they did not have a good-faith belief that their cease and desist letter was protecting legitimate intellectual property interests, and thus the element of lack of privilege is missing from the claim, citing *Mumma v. Wachovia Bank, N.A.*, 2016 WL 874782, at *4-5 (E.D. Pa. Mar. 2, 2016). In *Mumma,* however, the court was able to determine from public records that the lack of privilege was missing from the claim. By contrast, in the preliminary stage of this case, and taking the facts pleaded in Defendants' counterclaim as true, is premature to make any determination as to whether Plaintiffs had a good-faith belief that the cease and desist letter was protecting legitimate property interests. In addition, Plaintiffs contend that their claim of trademark infringement is privileged and Local Yokels does not even address that privileged claim.

Local Yokels argues that it has sufficiently pleaded the element of the absence of privilege or justification on the part of Warman and Moonshine in interfering with the relationship between Local Yokels and Chocolatier. Specifically, Local Yokels notes that it has alleged that Warman knew that there was no trade secret that Local Yokels could have possibly infringed by making fudge for Chocolatier. (See, e.g., ECF No. 52 ¶¶ 92-122, 129-40, 149, 161-62.) It further contends that Warman's June 26, 2019 email, in which he told Griffin that he was prohibited from soliciting, selling or engaging any customers under the Chocolate Moonshine trademark, was neither privileged nor justified as it was a part of a conspiracy to interfere with Chocolatier's ability to sell fudge in accordance with Chocolatier's LLC Agreement and fictitious name registration. (*Id.* ¶ 186.) Local Yokels asserts that the statements Warman made in his June 26, 2019, email to Griffin were knowingly false and that false statements are not privileged, citing *Giordano v. Claudio*, 714 F. Supp. 2d 508, 528 n. 11 (E.D. Pa. 2010). As that case held, resolving whether statements are privileged is beyond the scope of a motion to dismiss. Therefore, the Court concludes that the lack of privilege element has been sufficiently pleaded.

Regarding the element of damages, Plaintiffs contend that by virtue of Defendants' own description, the arrangement between Local Yokels and Chocolatier has not ceased despite the letter that was sent (ECF No. 52 ¶ 178), and therefore, they have not sufficiently alleged damages. However, they cite no authority to support the argument that a business relationship must completely cease in order to state a claim for tortious interference.

Local Yokels contends that it has sufficiently pled the element of damages as a result of the conduct of Warman and Moonshine. Specifically, it has alleged that it has sustained and will sustain in the future financial and reputational damages as a result of the tortious interference. (ECF No. 52 ¶ 235.) These damages include the loss or reduction in the sales of fudge as a result

of Griffin's inability to use the name "Chocolate Moonshine" which he had been defrauded into believing he would be able to use as a result of the conspiracy between Warman and Warman Jr. As such, the element of damages is sufficiently stated.

For these reasons, Local Yokels has stated a claim for tortious interference and therefore, the motion to dismiss Count III will be denied.

C.  Fraud Claim

Plaintiffs also seek dismissal of Count IX, which they contend insufficiently pleads a claim of fraud.

Under Pennsylvania law, the elements of fraud include "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst,* 538 Pa. 193, 207 (Pa. 1994).

Federal Rule of Civil Procedure 9(b) states that: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." As the Third Circuit Court of Appeals has stated:

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of America*, 361 F.3d 217, 223-224 (3d Cir. 2004). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. *See id.* at 224.

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Defendants argue that they allege in their pleading that Plaintiffs are using photographs of Local Yokels' fudge to sell their own fudge. (ECF No. 52 ¶ 253.) They contend that the use of

these photographs constitutes fraud because such use deceptively represents Local Yokels' fudge to be Plaintiffs' fudge. (*Id.*) According to Defendants, Plaintiffs are fraudulently "passing off" Local Yokels' fudge as their own product. (*Id.* ¶¶ 5, 33, 34, 250.)[3]

Defendants have identified the photographs as those that Plaintiffs improperly submitted as a part of a federal copyright registration as well as the circumstances under which Falvo staged these photographs. (*Id.* ¶¶ 198-203.) They also allege that Warman "in a typically sneaky and underhanded manner, obtained the copyrights in the photographs directly from [the photographer] and filed an application for a copyright registration." (*Id.* ¶ 206.) Moreover, they assert that the full extent to which Plaintiffs used Local Yokels' photographs and marketing materials to sell their own fudge is currently within Plaintiffs' knowledge and possession. As this can be appropriately developed in discovery, they argue, the pleading standard should be relaxed under these circumstances.

Plaintiffs assert that Defendants' allegations do not identify, among other things, any knowingly false misrepresentations made to Defendants with an intent to mislead them; any justifiable reliance by the Defendants on any such misrepresentations; and any injury to Defendants based on their reliance. The only persons who would have standing to bring a fraud claim based on Plaintiffs' use of "fudged photos," they assert, are third parties, such as someone purchasing fudge or the photographer who took the pictures.

Defendants have not alleged their fraud claim with sufficient particularity. While it is clear

---

[3] "Passing off" is a separate tort from fraud. "Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. 'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003) (citations omitted). Count VIII of Defendants' Counterclaims alleges a claim of passing off.

that they claim that Plaintiffs' use of the photographs fraudulently represents as their own products fudge that was actually manufactured by Defendant Local Yokel (*id.* ¶ 254), the requisite elements of their fraud claim are lacking. As an initial matter, they may be suggesting that Warman Jr. solicited Falvo's help to arrange for photos of Defendants' fudge but fraudulently omitted that the true purpose of this request was to obtain photographs for Plaintiffs' use in order to display these products as their own. Warman Jr. is not a party to this case, however,[4] and they do not allege that Warman, who is a party, was involved in soliciting the creation of these photographs. Indeed, Defendants only allege that Warman later obtained a copyright for these photos in an underhanded manner and is now improperly using them. Thus, no party to this lawsuit is alleged to have made a fraudulent misrepresentation or omission to any of the Defendants.

In addition, Defendants have not alleged that a decision to misrepresent who produced the fudge depicted in the photographs had been made before Falvo's assistance was sought and the photos were taken. Thus, it is far from clear that any alleged fraudulent misrepresentation or omission was actually made to her or any of the other Defendants. Indeed, the allegedly improper conduct appears to center on Warman's actions to obtain a copyright on the photos and then misrepresent the producer's identity in subsequent sales of the fudge. While, if true, this may have caused one or more of the Defendants to sustain damages, critically missing are facts to support the elements of a false misrepresentation made with intent to mislead and justifiable reliance on that misrepresentation. As Plaintiffs note, as currently pleaded, the only likely parties who could demonstrate reliance on a misrepresentation regarding the fudge represented in the photographs are consumers who were misled about the fudge they purchased.

---

[4] Defendants did implead Warman Jr. as a third-party defendant, but they later withdrew these claims.

Thus, with respect to Count IX, the motion to dismiss will be granted.

The Court of Appeals has held that:

> If a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Moreover, we have instructed that a district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.* Accordingly, even when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Amendment is futile where "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

As it is uncertain that amendment of the fraud claim would be futile, Count IX will be dismissed without prejudice with leave to amend.

## V.    Conclusion

For the reasons set forth herein, Plaintiffs' Partial Motion to Dismiss Counterclaims III, IV, V, VI, VII, and IX (ECF No. 56) will be granted in part and denied in part. Count IX will be dismissed without prejudice with leave to amend. Counts IV, V, VI and VII will be dismissed without prejudice to Defendants' right to move for attorney's fees if one or more of them are the prevailing parties. Plaintiffs' motion will be denied with respect to Count III.

An appropriate order will follow.

Dated: January 8, 2021                              BY THE COURT:

                                                    s/Patricia L. Dodge
                                                    PATRICIA L. DODGE
                                                    United States Magistrate Judge