## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER M. WARMAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action 19-1224 |
| | ) | Magistrate Judge Dodge |
| vs. | ) | |
| | ) | |
| LOCAL YOKELS FUDGE, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## **MEMORANDUM OPINION**

Plaintiffs Christopher M. Warman ("Warman"), the Trust for Family of Christopher Warman (the "Trust") and Chocolate Moonshine, LLC ("Chocolate Moonshine") brought this action against Defendants Local Yokels Fudge, LLC ("Local Yokels"), Christine Falvo ("Falvo"), Donald Konieczny ("Konieczny"), Charles Brian Griffin ("Griffin") and CM Chocolatier, LLC ("Chocolatier"). The Amended Complaint asserted various federal and state law claims arising out of Defendants' alleged use of Plaintiffs' recipe for making fudge, which was identified by Plaintiffs as a trade secret. Plaintiffs' claims were recently tried to a jury and the jury rendered a verdict in favor of Plaintiffs which will be discussed below.

Presently pending are two motions filed by the Trust: a Motion for Permanent Injunction (ECF No. 291) and a Supplemental Motion for Expedited Permanent Injunctive Relief Based on Continued Trade Secret Misappropriation by Defendants Local Yokels Fudge, LLC, Christine Falvo and Donald Konieczny (the "Supplemental Motion") (ECF No. 297).

For the reasons that follow, both motions will be denied.

## I.   Relevant Procedural History

Plaintiffs commenced this action in September 2019 and subsequently filed an Amended Complaint on August 27, 2020 (ECF No. 51). The Amended Complaint pleaded thirteen counts, among which were trade secret misappropriation in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1831-39 ("DTSA") (Count I), and the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. §§ 5301-08 ("PUTSA") (Count II) against Local Yokels and Falvo and an unjust enrichment claim against Griffin and Chocolatier (Count IX).

A jury trial commenced on November 27, 2023. At the conclusion of the trial, the jury rendered a verdict that found that the fudge recipe at issue is a trade secret owned by the Trust, that Defendants Falvo, Konieczny and Local Yokels (together, the "Local Yokels Defendants") were liable for trade secret misappropriation under federal and state law (Counts I and II), and that Defendant Chocolatier was liable on the unjust enrichment claim (Count IX) (ECF No. 288). Damages were awarded to the Trust against Local Yokels, Falvo and Konieczny regarding the misappropriation of trade secrets claim and to the Trust and against Chocolatier with respect to the unjust enrichment claim.

After the trial, the Trust filed a motion for a permanent injunction against the Local Yokels Defendants (ECF No. 291). It later filed the Supplemental Motion (ECF No. 297). Both motions have been fully briefed (ECF Nos. 292, 296, 304, 306, 315, 317, 324, 325). None of the parties requested a hearing or oral argument, and the Court has independently concluded neither is necessary in order to resolve the pending motions.

In its first motion, the Trust argues that it is entitled to a permanent injunction against the Local Yokels Defendants that, among other things, would permanently enjoin them from the disclosure, use, manufacture or sale of the trade secret, require them to submit to an audit and an

accounting and impose a permanent bar on a "worldwide basis" from dealing with any fudge products in any way, including manufacturing or selling fudge.

The Trust's Supplemental Motion seeks a permanent injunction based upon "continued trade secret misappropriation" to prevent the Local Yokels Defendants from using the trade secret recipe.

## II.   Standard of Review

A plaintiff seeking a permanent injunction must demonstrate that: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted).

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citation omitted). Thus, "[i]f a less drastic remedy . . . [is] sufficient to redress [a plaintiff's] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1359 (Fed. Cir. 2013) (citing *Monsanto*, 561 U.S. at 165).

Both the DTSA and PUTSA authorize injunctive relief. See 18 U.S.C. § 1836(b)(3); 12 Pa. C.S. § 5303(a). According to the Trust, an injunction may be imposed "without resort to the traditional equitable prerequisites if a statute expressly authorizes the injunction." *United States v. Preiss*, 2008 WL 2413895, at *4 (M.D.N.C. June 11, 2008) (citations omitted). *See also Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules*, 837 F.2d 171, 172 (4th Cir. 1988) ("a complainant

need not allege or prove irreparable harm when it invokes a statute that authorizes injunctive relief. All that need be proved is a violation of the statute."); *Litigation Mgt., Inc. v. Bourgeois*, 2011 WL 2270553, at *3 (Ohio App. June 9, 2011) ("When a trade secret is misappropriated, a threat of actual harm is presumed.")[1]

In *eBay*, however, the Supreme Court rejected the Federal Circuit's practice of automatically imposing permanent injunctions after a finding of patent infringement. *See also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) ("An injunction is a matter of equitable discretion [and issuance of an injunction] does not follow from success on the merits as a matter of course.").

Since then, courts have applied *eBay*'s reasoning to other causes of action. *See TD Bank N.A. v. Hill*, 928 F.3d 259, 279 (3d Cir. 2019) ("*eBay* abrogates our presumption of irreparable harm in copyright cases"); *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 206 (3d Cir. 2014) (no presumption of irreparable harm in a Lanham Act case); *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118-19 (2d Cir. 2009) (it is inappropriate to presume irreparable harm when a trade secret misappropriator "seeks only to use [the misappropriated] secrets— without further dissemination or irreparable impairment of value—in pursuit of profit.").

Thus, contrary to the Trust's suggestion, the concept of presumed injunctive relief in a trade secret misappropriation case has been rejected in recent decisions. As such, the Trust must demonstrate all of the relevant factors, including irreparable harm, in order to establish its right to

---

[1] As the Local Yokels Defendants note, however, the cases cited by the Trust are distinguishable. *Preiss* utilized the usual four-factor test and explained in dicta that the *eBay* equitable factors may not apply in a case where the statute (the Internal Revenue Code) set forth specific criteria for injunctive relief. *Capital Tool* involved a preliminary injunction and relied on a case with a government plaintiff. Finally, *Litigation Management* reversed the denial of a permanent injunction because the plaintiff "made a compelling case that the defendants would, unless enjoined, continue to use the misappropriated trade secrets," 2011 WL 2270553, at *4.

a permanent injunction.

In its Supplemental Motion, the Trust discusses the four traditional equitable factors but cites authority suggesting that, when reviewing a motion for a permanent injunction under PUTSA, state law factors should control. *PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co.*, 2020 WL 1526940, at *22-23 (W.D. Pa. Mar. 31, 2020) (citing *Kenset Corp. v. Ilanjian*, 600 F. App'x 827, 831 (3d Cir. 2015)), *aff'd on other grounds*, 47 F.4th 156 (3d Cir. 2022). The elements for a permanent injunction under PUTSA are: (i) the existence of a trade secret; (ii) the communication of the trade secret pursuant to a confidential relationship; (iii) the use or threatened use of the trade secret in violation of that confidence; and (iv) harm. *Id.* at *23.

The Local Yokels Defendants contend that these cases are distinguishable because they arose under diversity jurisdiction and thus involved injunctions only under PUTSA, not the DTSA. They argue that because the statutes are not identical, the Supremacy Clause requires that the federal standard should control. In addition, they note that this case unquestionably involves interstate commerce.

The Court need not resolve this issue because under Pennsylvania's criteria, the "proper inquiry is not whether defendant already has used or disclosed, but whether there is sufficient likelihood, or substantial threat, of defendant doing so in the future." *Den-Tal-Ez, Inc. v. Siemens Cap. Corp.*, 566 A.2d 1214, 1232 (Pa. Super. 1989).

## III.   The Parties' Positions

### A.   The Trust's Motion for Permanent Injunction

Relying on the injunctive relief permitted under the DTSA and PUTSA, the Trust's original motion for permanent injunction argued that it is entitled to a permanent injunction against the Local Yokels Defendants to prevent them from using the trade secret recipe in the future. The

Trust asserts that because the Local Yokels Defendants "extensively relied" on the trade secret and "derived substantial revenues" from using it to manufacture fudge, "there is little chance that [they] would cease relying upon the Trade Secret for manufacturing fudge." (ECF No. 292 at 2.) Because of its contention that a "use injunction," which would prevent these defendants from using the recipe, would be insufficient to protect it from further misappropriation, it also sought the imposition of a "production injunction," which would permanently bar the Local Yokels Defendants on a worldwide basis from making or selling fudge for sale using *any* fudge recipe. *See Mallet and Co., Inc. v. Lacayo*, 16 F.4th 364, 389 (3d Cir. 2021) (noting differences between the two types of injunctions).

The Trust argues that "[i]njunctive relief is warranted in cases where the harm is not subject to exact valuation and compensation through damage awards." (ECF No. 292 at 3) (quoting *Pestco, Inc. v. Associated Prod., Inc.*, 880 A.2d 700, 710 (Pa. Super. 2005)). It further asserts that "absent a permanent injunction, the Trust will suffer irreversible harm to its reputation and credibility if the public perceives that the Trust is unable to protect its proprietary trade secrets." (ECF No. 292 at 3.)

The Local Yokels Defendants counter that the Trust has failed to meet the four-factor test that is required in order to obtain injunctive relief. They argue that the Trust is not entitled to any injunctive relief, let alone the more drastic imposition of a production injunction. According to the Local Yokels Defendants, and contrary to the Trust's contention, the verdict in this case demonstrates that a jury is capable of evaluating the harm and assessing monetary damages. Indeed, the Trust was able to articulate a calculation of its damages by seeking a royalty of $.50 per pound of fudge produced by the Local Yokels Defendants. The only harm that the Trust might sustain if the Local Yokels Defendants continued to use the trade secret recipe would be that the

Trust could claim—as the Plaintiffs did at trial—that they lost revenues on sales that could have been made under the Chocolate Moonshine name.[2] However, the Local Yokels Defendants argue, that type of harm is redressable by monetary damages and would not warrant injunctive relief.

With respect to the Trust's position that it will suffer irreversible harm to its reputation if the public perceives that the Trust is unable to protect its proprietary trade secrets, the Local Yokels Defendants note that the Trust presented no evidence at trial that it sustained harm to its reputation or its credibility, or that the public is even aware of the existence of the trade secret.

As to the issue of a production injunction, the Local Yokels Defendants assert that it is a "radical remedy" that is wholly inappropriate in this case. They note that the Trust has not established any connection between the trade secret recipe and the manufacture of fudge, and that their future manufacture of fudge is not dependent on the trade secret.

Falvo and Konieczny have submitted declarations indicating that they will no longer use the trade secret recipe, nor will they sell, disclose or otherwise transfer it, and they have stated that they have no copies of the trade secret in their possession to destroy. (ECF No. 296 Exs. A, B.)

B. The Trust's Supplemental Motion for Expedited Permanent Injunctive Relief

In its Supplemental Motion, the Trust seeks a permanent production injunction to prevent the Local Yokels Defendants from continuing to make fudge.[3] The Trust argues that the declarations of Falvo and Konieczny that were submitted in response to the first motion are insufficient to demonstrate that they have changed their recipe. Further, the Trust suggests that the Local Yokels Defendants have no intention of doing so because these declarations do not reveal

---

[2] As explained below, the Trust has failed to demonstrate that the Local Yokels Defendants are still using the trade secret recipe.

[3] In the alterative, the Trust seeks a permanent use injunction that bars the Local Yokels Defendants from using the trade secret and any fudge recipe derived from the trade secret.

how they changed their fudge recipe after the trial.

Attached to the Supplemental Motion is a declaration by Warman ("Warman Decl. I")
(ECF No. 298), in which he:

- reports his "understanding" based upon "conversations with other show operators and attendees from the industry" that the fudge sold at certain shows by Griffin and Chocolatier since the date of the trial is "identical" to the fudge they sold previously;

- compares the website of Chocolate Moonshine's products with that of Copper Coast Confections (under which Griffin testified at trial that he is doing business) to show that the photos and product names are "nearly identical;"

- concludes that, based on his "nearly forty years of experience in the fudge industry, it would be virtually impossible for [the Local Yokels Defendants], within . . . the period that elapsed since the jury's verdict to independently develop a commercially viable fudge recipe . . . of a quality that I produce," so they must still be using the trade secret;

- recounts his conversation with a dairy supplier that Local Yokels has continued to place the same orders for half & half and heavy cream since the trial as it did previously;

- asserts that a store in Dallas, Texas called Chocolate Hangover continues to purchase fudge from Local Yokels while continuing to display the same Chocolate Moonshine fudge on its website as it did prior to the trial;

- contends that he has been "informed by promoters of certain events that I will not be able to participate in their events in 2024 because they already have 'the same product' as my fudge in their event" and he is certain that the seller of this fudge is Chocolatier and Griffin; and

- indicates that "Jim and Catherine McIntosh, the retail operator for Chocolate Moonshine in Detroit, Michigan, recently expressed alarm because of nearly identical fudge labeled 'Uncommon Chocolatier' that was being sold by a vendor in another booth that was approximately fifteen yards from the McIntoshes' booth" and Uncommon Chocolatier is a new Local Yokels distribution arm.

(Warman Decl. I ¶¶ 3-4, 6-9, 12.)

Based upon the contents of Warman's declaration, the Trust reiterates its request for a permanent production injunction to prevent the Local Yokels Defendants from producing fudge using any recipe. In addition, it requests attorney's fees because of its contention that the continued use of the trade secret recipe by the Local Yokels Defendants has been "willful and malicious."[4]

The Local Yokels Defendants submitted a response to the Supplemental Motion (ECF Nos. 304, 306), accompanied by a joint declaration signed by Falvo and Konieczny. In this declaration, they provide a detailed explanation of their immediate cessation after the trial of using the existing recipe and their creation of an entirely different fudge recipe based on Example 1 in U.S. Patent 3,370,961 issued to a third party on February 27, 1968. This patent was introduced as an exhibit at trial and was the subject of discovery prior to trial. (ECF Nos. 305, 307 & Ex. 1.)[5]

At trial, Defendants argued that Plaintiffs' fudge recipe could not constitute a trade secret because, inter alia, it used many of the same ingredients and processes as the patent, which is in the public domain. Notably, Warman testified that the two recipes were substantially different.

With respect to their process of developing a new recipe, Falvo and Konieczny state that they cooked a batch of fudge using the patent recipe and then modified it three times to obtain the fudge flavor, appearance and texture they found acceptable. (Falvo/Konieczny Decl. ¶¶ 5-21.) They explain that they used heavy cream, evaporated milk and a certain "doctoring agent" that Warman said he would never use, but which is disclosed in the patent (along with heavy cream). Like the patent, they do not add water, unlike the trade secret recipe. They then use the cooking process disclosed in the patent. They attest that they have not sold any fudge made from the trade

---

[4] The jury found that the actions of the Local Yokels Defendants prior to the trial were not willful and malicious. (ECF No. 288 Finding No. 6.)

[5] Because the trade secret recipe is discussed in these documents, the unredacted versions were filed under seal.

secret recipe to Griffin or to anyone else since the trial. (Falvo/Konieczny Decl. ¶¶ 1, 22, 26-31, 34, 41-42, 46.)

Finally, they state that Uncommon Chocolatier is not a distribution arm of Local Yokels but is a retail location in Myrtle Beach that Konieczny gave to Elle Lee, daughter of Warman and Falvo. (*Id.* ¶ 48.)

Attached to the Falvo/Konieczny declaration are the following: the notes they created as they made changes to the patent recipe (ECF No. 305 Ex. 2); a chart showing the progression of the formula development (*id.* Ex. 3); Plaintiffs' response to an interrogatory in which they noted the "very clear differences" between the trade secret recipe and the patent recipe (*id.* Ex. 4); an invoice showing Local Yokels' purchases of different ingredients for the new recipe (*id.* Ex. 5); and a chart showing cream to sugar ratios (*id.* Ex. 6). Finally, they include an email exchange with Jennifer Dean, the owner of Chocolate Hangover, in which they notified her of the new formula (*id.* Ex. 7) as well as the same exchange with Mike Galanti from on-line fudge seller Your Chocolate Guys (*id.* Ex. 9). A declaration from Dean is also provided in which she states that the photographs on the Chocolate Hangover website which Warman cites in his second declaration are over two years old. She also indicates that she had some fudge on hand in December 2023 that she bought from Local Yokels before the trial which she continued to sell thereafter,[6] and that the new fudge from Local Yokels tastes different than both the Chocolate Moonshine fudge and the old Local Yokels fudge (*id.* Ex. 8).

The Local Yokels Defendants argue that many of the statements in Warman's declaration are based solely on hearsay and/or Warman's own unfounded assumptions and conclusions. In

---

[6] Nothing in the jury's verdict or in the injunctions that the Trust requests would bar third parties from selling fudge purchased from Defendants prior to the trial.

addition, they note that many of his accusations involve alleged actions of Griffin and Chocolatier that have nothing to do with the possible use of the trade secret or the manufacture of fudge by the Local Yokels Defendants.[7] Notably, Griffin and Chocolatier are not parties against whom the Trust seeks injunctive relief.

The Trust sought and was granted leave to file a reply brief (ECF Nos. 315, 317), to which it attached another declaration by Warman ("Warman Decl. II") (ECF Nos. 316, 318).[8] In this declaration, Warman claims that he and his attorneys "conducted a comparative study" of the recipe the Local Yokels Defendants are now using, the patent recipe and the trade secret recipe. Warman states that when the three formulas were scaled to a "foundational ingredient reference point," the sugar/fat ratio of the new Local Yokels recipe is very different from that of the patent but closer to that of the trade secret recipe. He claims that the same is true with respect to the "doctoring agent" and notes that Local Yokels uses butter instead of the patent's use of hydrogenated vegetable oil.[9] Finally, he asserts that Local Yokels' claim that it is not using water is false because other ingredients in the recipe have water in them. Thus, Warman contends, the study he and his attorneys conducted reveals that the new recipe being used by the Local Yokels Defendants is "more closely aligned to" to the trade secret recipe than it is to the patent recipe.

In turn, the Local Yokels Defendants obtained leave to file a sur-reply brief (ECF Nos.

---

[7] This includes questioning their participation at certain shows in order to sell fudge (and presumably, competing with Warman's company) and what is displayed on the Chocolatier website.

[8] Again, because the trade secret recipe is discussed in these documents, the unredacted versions were filed under seal.

[9] In their declaration, Falvo and Konieczny explain why their experimentation led them to switch from hydrogenated vegetable oil to butter. (Falvo/Konieczny Decl. ¶¶ 16-17.) While acknowledging their reasoning, Warman inexplicably claims that "this makes their statement that they derived their current fudge recipe from the '961 Patent completely incredible, as they did not include this key ingredient used in the '961 fudge formula." (Warman Decl. II ¶ 26.)

324, 325). They contend that Warman, who is not an expert with a degree in food science, candy-making-chemistry or mathematics, has failed to provide any basis for his ability to make a "comparative study." They note that a sugar/fat ratio is not a part of the trade secret, so even if their product achieves a similar value by using a different recipe, this cannot represent misappropriation of the trade secret recipe. They also point out that at trial, Warman testified under oath that he does not use the "doctoring agent" and further, that the trade secret recipe is distinctive because it adds water. Both of these positions that Warman took at trial are contradicted here.

The Local Yokels Defendants also provide a number of exhibits, including another joint declaration by Falvo and Konieczny (*id.* Ex. 3 & Exs. A-B). In their declaration , they assert that the comparative study contains numerous analytical and calculation errors. In addition, they have submitted a declaration by Griffin (*id.* Ex. 4 & Exs. A-D) that also contends that there are errors in Warman's calculations.

## IV.    Analysis

The Trust has failed to demonstrate that it is entitled to any injunctive relief, including either a use or a production injunction.

As an initial matter, the Trust's factual arguments in support of its request for an injunction rely almost entirely upon Warman's declarations. In turn, the Local Yokels Defendants have submitted declarations that contradict those of Warman. The Court will not engage in weighing the credibility of these declarations as that would be inappropriate absent an evidentiary hearing and notably, none of the parties requested such a hearing. At any rate, it is unnecessary to do so because for multiple reasons, both of Warman's declarations on which the Trust relies fail to meet the necessary evidentiary standards. Thus, these declarations fail to support the drastic remedy that the Trust seeks.

"An affidavit or declaration . . . must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Warman's declarations fail to meet these standards. Instead, his declarations substantially rely on hearsay, suppositions, assumptions and unsupported conclusions. For example, many of his statements are rank hearsay offered for their truth, including his claim about what he was supposedly told during "conversations with other show operators and attendees from the industry;" what a dairy supplier told him about purchases made by Local Yokels; what he was informed by "promoters of certain events;" and what he was told by the McIntoshes. All of this testimony represents inadmissible hearsay and notably, the Trust makes no effort to argue otherwise. Thus, this hearsay cannot and will not be considered in connection with the Trust's motions.

Nor is it in any way relevant that various websites include photos of fudge that "looks nearly identical to" fudge made from the trade secret recipe. Even if Warman's supposition is considered, however, he submits no evidence regarding when these photos were taken, who made this product or whether the "nearly identical" fudge depicted was made after the trial by the Local Yokels Defendants by using the Trust's trade secret. In addition, to the extent that Warman's declaration discusses the actions of Griffin and Chocolatier, neither of the Trust's motions seek an injunction against Griffin and Chocolatier. Indeed, it is uncontroverted that neither makes fudge, and they are not precluded from selling the "same product," i.e., fudge. Thus, this information is wholly irrelevant to whether an injunction against the Local Yokels Defendants is necessary.

The Third Circuit also requires that "an affiant . . . state facts, rather than opinions and conclusions." *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985). Warman's conclusory opinion that the Local Yokels Defendants could not have developed a new recipe that is of similar

quality to the trade secret recipe in the short period of time since the trial is just that, his own opinion. It is not supported by any relevant facts. By contrast, the Local Yokels Defendants provided a detailed description, based on their personal knowledge, of the process by which they developed their recipe. And as they have noted, it did not take them long to develop a fudge recipe, particularly given Falvo's thirty years in the fudge-making business and the fact that the new recipe is based on the patent, a pre-existing public recipe which calls for the use of public domain ingredients.

Warman's second declaration also lacks any sound evidentiary basis. He lays no foundation for his ability (or that of his attorneys) to conduct a study comparing the three formulas or to provide expert testimony. As demonstrated during the trial, he has no scientific, technical, or other specialized knowledge about fudge formulas, nor does making fudge require any such knowledge. Indeed, Warman testified at trial that he created the trade secret formula through divine intervention. Thus, since the fundamental premise of this study is fatally flawed, it is unnecessary to address the parties' dispute about whether his study is accurate or filled with errors.

The Court also notes that Warman's declaration materially contradicts his trial testimony on at least two key matters. First, he contended before and during trial that his fudge was unique and superior to all others because, among other things, it does not contain a certain "doctoring agent." He has also consistently denied that his fudge recipe is the same as the one in the patent, which does use the "doctoring agent." However, now that the Local Yokels Defendants have included this ingredient in their new recipe, thereby distinguishing it from the trade secret, he wholly minimizes the significance of this distinction. Second, he emphasized at trial that the trade secret recipe uses water. But upon learning that Local Yokels Defendants' recipe does not use water as a separate ingredient, he now attempts to argue that there is water contained in some of

their other ingredients. This conveniently ignores the fact that the trade secret recipe uses these other ingredients as well.

Ultimately, Warman claims that the Court should disbelieve Falvo and Konieczny's statement that their new recipe is based on the patent because through his calculations, he has concluded that their new recipe is "more closely aligned to" to the trade secret than it is to the patent. This statement is both telling and irrelevant, as neither federal nor state law precludes parties from making a product with a recipe that is "more closely aligned to" a trade secret recipe than one available in the public domain without evidence of misappropriation. And as discussed previously, the Trust has not submitted such admissible evidence.

Here, the issue raised by the Trust is whether the Local Yokels Defendants continue to use the trade secret recipe. No admissible evidence supports this contention. Falvo and Konieczny have stated under oath that they stopped using the trade secret recipe after the trial and have developed a new recipe by starting with the patent and making various adjustments thereto. The materials submitted by the Trust do not refute this testimony. Putting aside inadmissible hearsay, speculation and self-serving suppositions, it is only possible, at best, to conclude that the Local Yokels Defendants are using a fudge recipe that has some similarity to the trade secret but varies in at least two material respects that Warman himself highlighted as significant at trial and indeed, what he claims makes his fudge different and unique. And as demonstrated at trial, there are any number of fudge recipes that have similar ingredients.

Based on this factual analysis, the Court now turns to the factors that must be demonstrated in order to be entitled to the extraordinary relief of a permanent injunction. The first is the element of irreparable harm. The Trust argues that "an intention to make imminent or continued use of a trade secret or to disclose it to a competitor will almost certainly show immediate irreparable

15

harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92-93 (3d Cir. 1992).[10] Here, however, the Trust has failed to show that the Local Yokels Defendants intend to continue to use the trade secret or have done so. The evidence submitted by the Local Yokels Defendants, evidence that is unrefuted by the Trust through any admissible evidence, supports a finding that they have discontinued use of the trade secret recipe, have no plans to resume using it and have developed a new recipe for producing fudge.

Moreover, the Trust has not supported its contention that it will suffer irreversible harm if the public perceives that the Trust is unable to protect its proprietary trade secret. There is no evidence that the Trust has already sustained any harm to its reputation or its credibility or will sustain any such harm in the future if an injunction is not entered. In fact, there has been no showing that the public is even aware of this controversy, let alone that the public has any interest in protecting the Trust's recipe or its possible use by the Local Yokels Defendants. Indeed, if the Local Yokels Defendants were making fudge using the trade secret recipe, it presumably would be of the same superior and unique quality as that produced by Plaintiffs. The Trust does not contend that the Local Yokels Defendants are making inferior fudge and passing it off as a Chocolate Moonshine product. While in such a scenario their actions could cause irreparable harm to the reputation of Plaintiffs, that situation does not exist here. Rather, if the Trust had shown a continued use of the trade secret, which it has not, the end result would be that two identical fudge products were being produced under different company names. As such, the Trust does not explain why any of the Plaintiffs would sustain any harm to their reputation, even assuming that the public somehow gained an awareness of the situation.

---

[10] In that case, however, the court concluded that "here the record shows ConAgra had discontinued its past use of Campbell's process . . . [and] Campbell has presented no evidence that ConAgra is about to use the technology Campbell seeks to protect." *Id.* at 93.

In short, the Trust has failed to establish that it will sustain irreparable harm if the Local Yokels Defendants continue to make and sell fudge.

Even assuming for the sake of argument that the Local Yokels Defendants were continuing to use the trade secret recipe, the Trust has not shown that monetary damages would be inadequate of compensate them for any harm sustained as a result. The Trust argues that:

> The irreparable harm that is being caused to the Trust through the loss of sales on the part of Chocolate Moonshine are not susceptible to quantification. *E.g., Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 211 (3d Cir. 2014) ("the harm necessarily caused to reputation and goodwill is irreparable because it is virtually impossible to quantify in terms of monetary damages"). This harm, which is impossible to quantify, directly impacts the Trust, as Chocolate Moonshine has agreed to pay royalties to the Trust for sales of fudge made by Chocolate Moonshine. *See also Minnesota Mining & Manufacturing Co. v. Pribyl*, 259 F.3d 587, 607 (7th Cir. 2001) ("[t]he purpose of a permanent injunction is to protect trade secret owners from the ongoing damages caused by future use of trade secrets"); *E.I. Dupont de Nemours & Co. v. Kolon Industries*, 894 F. Supp. 2d 691, 708 (E.D. Va. 2012) ("the continued use of a purloined trade secret is a harm of significant measure that warrants injunctive relief").

(ECF No. 297 at 4.)

This argument is fundamentally flawed for several reasons. Even putting aside the lack of proof that the Local Yokels Defendants are using the trade secret recipe, the Trust has not demonstrated that it will sustain any loss of goodwill or reputation if injunctive relief is not imposed as explained above. Further, even if the Local Yokels Defendants were shown to be wrongfully using the trade secret recipe, any lost sales are quantifiable by seeking monetary damages with respect to sales of fudge made using the trade secret recipe. As reflected in the recent trial, Plaintiffs took the position that such remedies are adequate to compensate for that injury by seeking and obtaining an award of damages. Thus, in the absence of any evidence of loss of goodwill or damage to reputation, there are available remedies at law in the event that the Local Yokels Defendants would resume their use of the trade secret recipe.

The Trust also argues that the balance of hardships weighs in its favor. However, this argument is based on the premise that it has shown that the Local Yokels Defendants are still using the trade secret recipe. As discussed, it has not made such a showing. Thus, imposing a production injunction would preclude the Local Yokels Defendants on a "worldwide" basis from engaging in the business of making fudge. This would be an unjust result based on the Trust's failure to prove the necessity of such an injunction. "Injunction orders should not restrain competitors from engaging in lawful business activities." *Mallet & Co.*, 16 F.4th at 390 (footnote and citation omitted). In balancing the interests of the parties, imposing a permanent ban on the ability of the Local Yokels Defendants to produce any fudge would result in an extreme hardship. The Trust has not shown that such an equitable remedy is necessary. Thus, the balance of hardships clearly weighs in favor of the Local Yokels Defendants.

Finally, the Trust's argument that the public interest would be served by upholding the jury verdict and ensuring fair business practices is also rejected. Indeed, the Trust presented no evidence that there is any public interest here at all. Simply put, this is a controversy between the parties about a recipe for making fudge; nothing more.

The Trust has not met its burden of demonstrating that it is entitled to the extraordinary relief of a use or a production injunction. Therefore, both of its motions for a permanent injunction will be denied.

## V. Conclusion

For the reasons set forth herein, the Trust's Motion for Permanent Injunction (ECF No. 291) and the Supplemental Motion for Expedited Permanent Injunctive Relief Based on Continued Trade Secret Misappropriation by Defendants Local Yokels Fudge, LLC, Christine Falvo and Donald Konieczny (ECF No. 297) will be denied.

Appropriate orders will follow.


Dated: March 26, 2024                        BY THE COURT:

                                             /s/Patricia L. Dodge
                                             PATRICIA L. DODGE
                                             United States Magistrate Judge