IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER M. WARMAN, TRUST FOR FAMILY OF CHRISTOPHER WARMAN, CHOCOLATE MOONSHINE, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> LOCAL YOKELS FUDGE, LLC, CHRISTINE FALVO, CHARLES BRIAN GRIFFIN, DONALD KONIECZNY, CM CHOCOLATIER, LLC, <br><br> Defendants. | Civil Action 2:19-1224 |

**MEMORANDUM OPINION AND ORDER**

Presently before the Court is Defendants' Motion to Vacate Jury Award (ECF No. 377).[1] For the reasons that follow, their motion will be denied.

**I.   Relevant Procedural Background**

Plaintiffs Christopher M. Warman ("Warman"), the Trust for Family of Christopher Warman ("Trust") and Chocolate Moonshine, LLC brought this action against Defendants Local Yokels Fudge, LLC ("Local Yokels"), Christine Falvo ("Falvo"), Donald Konieczny ("Konieczny"), Charles Brian Griffin and CM Chocolatier, LLC. The Amended Complaint asserted various federal and state law claims arising out of Defendants' alleged use of Plaintiffs' recipe for making fudge, which was asserted to be a trade secret. The case was tried before a jury and the jury rendered a verdict in favor of Plaintiffs.

---

[1] The motion was filed under seal because it refers to certain AEO documents or information that the Court determined to be confidential during trial. Redacted versions of the motion (without exhibits) and brief were filed at ECF Nos. 372 and 373.

In their pending motion, Defendants contend that, under Rule 60(b)(3), the jury verdict in favor of Plaintiffs on their claims of trade secret misappropriation should be vacated because Warman committed perjury in his testimony. The motion has been fully briefed (ECF Nos. 375, 399, 407, 413).

## II.   Relevant Factual Background

On December 8, 2023, at the conclusion of a two-week trial, the jury found that: (1) the recipe for making fudge that was developed by Warman and owned by the Trust constituted a trade secret; (2) Defendants Local Yokels, Falvo and Konieczny misappropriated the trade secret; and (3) a reasonable royalty to the Trust for the unauthorized disclosure or use of the trade secret in the amount of $145,777 was appropriate. The jury also found that Defendants' misappropriation was not willful and malicious. (ECF No. 288.)[2]

As Defendants note, Plaintiffs contended that their trade secret recipe was unique because it did not contain certain "doctoring agents" that are used in almost all other fudge recipes, especially a "Particular Component" ("PC"). Warman testified during the trial at length about this issue. (ECF No. 377 Ex. 1 at 63-65, 104; Ex. 2 at 161.) He also testified that unlike many other recipes, Plaintiffs' trade secret recipe added water. Plaintiffs' counsel emphasized these points in his closing argument. (ECF No. 377 Ex. 10 at 10, 12.)

Shortly after the conclusion of the trial, the Trust filed a Motion for a Permanent Injunction (ECF No. 291) and subsequently, a Supplemental Motion for Expedited Permanent Injunction Relief (ECF No. 297). In these motions, the Trust argued that Defendants Local Yokels, Falvo and Konieczny ("Defendants") were continuing to use Plaintiffs' trade secret recipe.

---

[2] The jury verdict contained other findings that are not relevant here.

In their responses to Plaintiffs' motions, Defendants asserted that they were no longer using the trade secret recipe and had created a different fudge recipe that was based on a 1968 patent that was discussed both during discovery and during the trial. Among other things, they noted was that their new recipe contained PC, the "doctoring agent," and Warman testified during the trial that PC is not included in Plaintiffs' trade secret recipe. In addition, they noted, their recipe also differs from the trade secret recipe because it does not add water.

In a reply brief in support of their Supplemental Motion, Plaintiffs supplied a second declaration by Warman. In that declaration, Warman stated that, "I have always recognized and acknowledged that by using [another ingredient], I am introducing [some PC] into the Trade Secret fudge formula." (ECF No. 318 ¶ 23.) Warman also stated that "water is contained in the [other liquid] ingredients used in a fudge formula." (*Id.* ¶ 27.)

The Court denied both of Plaintiffs' motions (ECF Nos. 345, 346), noting among other matters that:

> Warman's declaration materially contradicts his trial testimony on at least two key matters. First, he contended before and during trial that his fudge was unique and superior to all others because, among other things, it does not contain a certain "doctoring agent." He has also consistently denied that his fudge recipe is the same as the one in the patent, which does use the "doctoring agent." However, now that the Local Yokels Defendants have included this ingredient in their new recipe, thereby distinguishing it from the trade secret, he wholly minimizes the significance of this distinction. Second, he emphasized at trial that the trade secret recipe uses water. But upon learning that Local Yokels Defendants' recipe does not use water as a separate ingredient, he now attempts to argue that there is water contained in some of their other ingredients. This conveniently ignores the fact that the trade secret recipe uses these other ingredients as well.

(ECF No. 345 at 14-15.)

Based on this series of events, Defendants now move to vacate the jury award on the ground that Warman testified fraudulently at trial.

**III.     Discussion**

Under Rule 60(b)(3), "the court may relieve a party or its legal representative from a final judgment, order or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). To prevail on a Rule 60(b)(3) motion, the moving party must establish, by clear and convincing evidence, *Brown v. Pa. R.R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960), that the adverse party engaged in fraud or other misconduct, and that this misconduct prevented the moving party from fully and fairly presenting her case. *See Stridiron v. Stridiron*, 698 F.2d 204, 206-07 (3d Cir. 1983). Additionally, the movant must demonstrate that the fraud or misrepresentation was material to the outcome of the case. *Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 73 (3d Cir. 1985).

The movant in a Rule 60(b) motion carries a heavy burden, as Rule 60(b) motions are viewed as "extraordinary relief which should be granted only where extraordinary justifying circumstances are present." *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (internal quotation marks omitted).

Given this exacting standard, it is unsurprising that there are very few decisions granting relief based on perjury allegedly committed at trial.[3] In their briefing, Defendants reference one such decision, but it bears little resemblance to the factual issues here. In *Bethel v. McAllister Brothers, Inc.*, 81 F.3d 376 (3d Cir. 1996), the Court of Appeals for the Third Circuit affirmed a district court's order granting a new trial on the basis of fraud. The case was brought by Bethel, a river docking pilot who alleged that his former employer, McAllister, defamed him by asserting that it fired him because he refused to take a drug test after an injury, thereby suggesting that he

---

[3] More typically, Rule 60(b)(3) cases often involve failure to disclose or produce evidence requested in discovery. *See Stridiron*, 698 F.2d at 207 (granting Rule 60(b)(3) motion based on husband's later-discovered failure to produce his prior marriage certificate).

was a drug user. To support his claim and to prove that he suffered special harm, Bethel testified at trial that a subsequent employer fired him when it conducted during a background check and learned what had happened.

After the trial, however, McAllister discovered that Bethel had testified at an arbitration hearing held before the trial that his subsequent employer had given him eight different reasons why he was fired, which demonstrated that Bethel had lied in his testimony during trial. As a result, McAllister filed a Rule 60(b)(3) motion. The court subsequently held that Bethel's misrepresentation about why he was fired "was not merely material to his case. It was crucial." *Id.* at 385. Indeed, the court found that, "by concealing the actual reasons [the subsequent employer] gave him for his discharge, Bethel prevented McAllister from fully and fairly presenting its defense, as these events took place after discovery was closed and immediately before the trial." *Id.*

Thus, in *Bethel,* the Rule 60(0(3) motion was granted based in large measure on the plaintiff's efforts to conceal facts that prevented the defendant from fully presenting its defense. Here, by contrast, Defendants have not shown that they were prevented from fully presenting a defense or have otherwise met the heavy burden necessary to obtain the extraordinary relief of vacating the jury award.

As previously discussed, Defendants first identify two inconsistencies between Warman's testimony at trial and his post-trial declarations about the ingredients in trade secret recipe. They argue that this inconsistent testimony reflects perjured testimony that requires vacating the jury verdict. Plaintiffs counter that Warman's statements can be reconciled. They argue that at trial, Warman testified about whether the trade secret recipe included PC as a standalone ingredient, while in his post-trial submissions, he was considering all of the ingredients in Defendants' new

recipe in order to compare the nutrient content of total fats, total sugar, total quantity of water and the sugar-to-fat ratios from all sources. Thus, they contend that his statements are consistent. In addition, they note that at trial, Warman testified that based on his understanding, when the small amount of PC is combined with another ingredient, a molecular change occurs so that it no longer behaves like a doctoring agent. (ECF No. 413 at 2-3.) With respect to water, Plaintiffs assert that Warman has consistently testified that the water content in the trade secret recipe is irrelevant because it varies depending on the season and the location to which the fudge is shipped.

In fact, in the excerpt from Warman's testimony cited by Defendants about the amount of PC, they have omitted Warman's full quote, namely that "it might be a couple percent because there are two pounds of [PC] in one of [the other] ingredients so you can qualify this as a minute amount but their fudge essentially has no doctoring agents. My fudge has no doctoring agents." (ECF No. 377 Ex. 1 at 104:6-10.) In addition, Defendants have omitted the portion of Warman's declaration that stated, "Although the Trade Secret fudge formula does not use additional [quantities of PC]" before the statement "I have always recognized and acknowledged that by using [another ingredient], I am introducing [some PC] into the Trade Secret fudge formula." (ECF No. 318 ¶ 23.) *See also id.* ¶ 24 (concluding that the difference in the amount of PC between the new Local Yokels recipe and the trade secret recipe was less than the difference in the amount between the new Local Yokels recipe and the patent). That is, Warman was stating that the trade secret formula did not use *additional* quantities of this item as a standalone ingredient but acknowledged that it had some small quantity as part of another ingredient.[4]

Warman's ultimate conclusion was that Defendants' new recipe was "more closely

---

[4] Defendants argue that Warman never used the word "standalone" but his declaration clearly used the word "additional." And his trial testimony described the amount of PC introduced through another ingredient as "minute."

aligned" with the trade secret recipe than it was with the recipe in the patent from which they asserted it was derived. (ECF No. 318 ¶ 9.) *See also id.* ¶ 24 (the amount of PC is "closer" to that in the trade secret recipe.) However, the Court rejected this argument on the ground that it did not rely on the proper standard. For the same reason, the Court rejects Defendants' misrepresentation that Warman said that "a recipe with 6 pounds of [PC] was the same as his recipe because his recipe also has two pounds of [PC]." (ECF No. 407 at 4.) He did not say it was the same, he said it was "closer," but that is irrelevant for purposes of misappropriation.

Warman never testified, either at trial or subsequently, that the use of another ingredient that contains a small quantity of PC means that the recipe itself contains enough of it to be considered a "doctoring agent" or to be significant. To the contrary, as Plaintiffs note, he specifically testified that he believes that the minute quantity of PC included as part of another ingredient undergoes a molecular change and no longer functions as a doctoring agent. Nor did the Court find that Warman's recipe does include a doctoring agent, as Defendants assert (ECF No. 375 at 10).

Even if the statements could not be reconciled, however, "simple disagreement with a witness' testimony, or inconsistencies in his or her testimony, do not support a finding of perjury." *Ellis v. City of Pittsburgh*, 656 F. App'x 606, 610 n.3 (3d Cir. 2016) (citing *Montano v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008)). *See Henderson v. Matthews*, 570 F. Supp. 3d 272, 279 (E.D. Pa. 2021) (refusing to vacate jury verdict based on alleged inconsistencies in witnesses' testimony, which did not rise to the level of perjury).

Finally, even if the evidence demonstrated unequivocally that Warman was lying, it does not prove that he was lying at trial, which is the issue here. In fact, it is equally plausible that he was telling the truth at trial and then, post-trial, he changed course and contradicted his prior

testimony in order to support his motion for injunctive relief even after the record demonstrated that Defendants had altered their recipe. Indeed, that was what this Court's opinion implied: Warman's second declaration was rejected because it "lack[ed] any sound evidentiary basis." To the extent that Defendants argue that the opposite is true—namely, that Warman was lying at trial and then told the truth about these matters in his post-trial declaration—they have provided no support for this conclusion.[5]

In their reply brief, Defendants take a somewhat different tack: they argue that Warman's testimony about the trade secret recipe being "unique" because it did not contain a doctoring agent and because it added water was rendered false by his later declaration and other evidence[6] and that, as a result, the recipe could not constitute a trade secret. This argument must be rejected because these elements were not the only basis upon which Plaintiffs asserted that the recipe could be classified as a trade secret. They also argued, for example, that the combination of ingredients and the process of making the fudge were distinct.

Thus, Defendants cannot point to clear and convincing evidence that Warman engaged in fraud to obtain a jury verdict. But in addition to this, they have not demonstrated that Warman's alleged misconduct prevented them from fully and fairly presenting their case. On the contrary, at trial, Warman was cross-examined extensively by Defendants' counsel on all aspects of his

---

[5] Defendants argue that Warman "lied to the jury to convince it to reach the conclusion that Defendants' recipe was a copy of his recipe to achieve a favorable verdict, but then changed his sworn testimony to try and convince the Court to grant his motion for permanent production injunction" (ECF No. 375 at 8-9). This actually suggests that Warman was lying on both occasions. *See also* ECF No. 407 at 5 ("Warman's arguments evolved to suit his in-the-moment, litigious goals.") But it was the province of the jury to determine if Warman was credible.

[6] Somewhat oddly, Defendants point out that the label on the packaging of Chocolate Moonshine fudge lists PC as an ingredient (ECF No. 407 at 2). But they do not contend that they lacked access to this publicly available information until after the trial, nor could they. Thus, there is no reason they could not have cross-examined Warman using the packaging label.

testimony, including the use of PC and the addition of water to the recipe. Moreover, counsel also cross-examined Warman on discrepancies between his testimony and his prior testimony at other proceedings involving the trade secret recipe. For example, he was confronted with prior inconsistent statements when he testified in state courts in 1997 and 2012 about his exclusive use of certain fudge ingredients and about the amount of money he paid to obtain a recipe from another fudge maker. The jury was presented with multiple challenges to Warman's credibility.

The jury heard all of this testimony and presumably found Warman's trial testimony to be credible. In any event, there is no basis to conclude that, had the jury heard what Warman said in his subsequent declaration, they would have disbelieved his trial testimony. *See, e.g., Johnson v. General Bd. of Pension & Health Benefits of United Methodist Church*, 2012 WL 638731, at *3 (N.D. Ill. Feb. 23, 2012) (denying Rule 60(b)(3) motion when "Johnson had the opportunity to and did in fact attempt to impeach the General Board's witnesses, leaving it to the jury to affix the appropriate weight to their testimony."), *aff'd*, 733 F.3d 722 (7th Cir. 2013). Therefore, Defendants cannot demonstrate that they were prevented from fully and fairly presenting their case.

For these reasons, it is ORDERED that Defendants' Motion to Vacate Jury Award (ECF No. 377) is DENIED.

                                                  SO ORDERED this 30th day of October 2024.

                                                  /s/Patricia L. Dodge
                                                  PATRICIA L. DODGE
                                                  United States Magistrate Judge