IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER M. WARMAN, et al.,   ) | |
| ) | |
| Plaintiffs,   ) | Civil Action 19-1224 |
| ) | |
| vs.   ) | Magistrate Judge Patricia L. Dodge |
| ) | |
| LOCAL YOKELS FUDGE, LLC, et al.,   ) | |
| ) | |
| Defendants.   ) | |

**MEMORANDUM OPINION**

Plaintiffs Christopher M. Warman ("Warman"), the Trust for Family of Christopher Warman (the "Trust") and Chocolate Moonshine, LLC ("Moonshine LLC") brought this action against Defendants Local Yokels Fudge, LLC ("Local Yokels"), Christine Falvo ("Falvo"), Charles Brian Griffin ("Griffin"), Donald Konieczny ("Konieczny") and CM Chocolatier, LLC ("Chocolatier"). The Amended Complaint asserted various federal and state law claims arising out of Defendants' alleged use of Plaintiffs' recipe for making fudge, which they claimed to be a trade secret. The case was tried before a jury and the jury rendered a verdict, as described below.

Pending before the Court is Defendants' Motion for Counsel Fees Pursuant to Fed. R. Civ. P. 54 (ECF No. 425). For the reasons that follow, their motion will be granted.

I.  **Relevant Procedural History**

Plaintiffs commenced this action in September 2019 and subsequently filed an Amended Complaint on August 27, 2020 (ECF No. 51). The Amended Complaint includes thirteen counts, including: trade secret misappropriation in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1831-39 ("DTSA") (Count I), and the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. §§ 5301-08 ("PUTSA") (Count II); contributory trademark infringement in violation of the

Lanham Act, 15 U.S.C. § 1125 (Count III); trademark infringement (Count V); unjust enrichment (Count IX); contributory copyright infringement by Falvo, Local Yokels and Konieczny (Count XII); and copyright infringement by all Defendants (Count XIII), with the last two claims based on violations of the Copyright Act, 17 U.S.C. § 501.

When this action was commenced, Plaintiffs were represented by John Thomas and Anthony Brooks of The Webb Law Firm, both of whom are intellectual property (IP) attorneys. After Plaintiffs' counsel and The Webb Law Firm withdrew in October 2021, Plaintiffs retained Attorney Michael Betts, who entered his appearance on December 20, 2021 (ECF No. 103).[1] Gwen Acker Wood, who is also an IP attorney, entered her appearance on behalf of Plaintiffs on July 21, 2022. (ECF No. 129.)

On December 27, 2022, an opinion and order were issued that granted Defendants' motion for summary judgment as to Counts III, V, XII and XIII (the trademark and copyright infringement claims) and denying it in all other respects (ECF Nos. 159, 160).

On November 27, 2023, a jury trial commenced on Plaintiffs' trade secret misappropriation and unjust enrichment claims. At the conclusion of the trial, the jury reached a verdict in favor of Plaintiffs, finding that the recipe was a trade secret owned by the Trust, that Defendants Falvo, Konieczny and Local Yokels were liable for trade secret misappropriation under federal and state law and that Defendant Chocolatier was liable for unjust enrichment. The jury awarded damages with respect to these claims (ECF No. 288).

On December 9, 2024, Defendants filed the motion currently under consideration (ECF No. 425), which has been fully briefed (ECF No. 454).

---

[1] Mr. Betts' motion to withdraw as counsel for Plaintiffs was granted on May 17, 2024. (ECF No. 354.)

2

II.   Analysis

    A.  Standard of Review

Rule 54 provides that a motion for attorney's fees must:

> (i) be filed no later than 14 days after the entry of judgment;
> (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
> (iii) state the amount sought or provide a fair estimate of it; and
> (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d)(2)(B).[2] Defendants seek attorney's fees under both the Lanham Act and the Copyright Act. *See* 15 U.S.C. § 1117(a) (in an action for trademark infringement, "The court in exceptional cases may award reasonable attorney fees to the prevailing party."); 17 U.S.C. § 505(a) (in a copyright infringement action, "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.")

It is undisputed that Defendants were the prevailing parties on the Lanham Act and Copyright Act claims as summary judgment was granted in their favor. *See Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280 (3d Cir. 2000) (highlighting that "the language of § 35(a) authorizing attorney's fees to the prevailing party in the discretion of the court [applies to] defendants as well as plaintiffs.").

    B.  Lanham Act

The Court of Appeals has held that "a district court may find a case 'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable

---

[2] Following the trial, the parties engaged in various motions practice and settlement discussions. As a result, judgment on the jury's verdict was not entered until December 2, 2024 (ECF No. 423). Defendants' Rule 54 motion was timely filed within 14 days of the entry of judgment.

manner.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).[3] Courts may consider a list of factors that include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6 (quoting *Fogerty v. Fantasy*, 510 U.S. 517, 534 n. 19 (1994)).

Defendants moved for summary judgment with respect to the trademark infringement claims in Counts III and V based upon their assertion that the trademark "Chocolate Moonshine Co." was procured by fraud. The factual basis for their argument related to the trademark application submitted by Christopher Warman, Jr. ("Warman Jr."), the son of Plaintiff Warman. When he applied for a trademark with the United States Patent and Trademark Office ("PTO") on July 23, 2014, Warman Jr. misrepresented that he owned the mark when it was actually owned by his father.[4]

In resolving this issue, the Court stated in its opinion that:

> Here, the uncontroverted facts show that the misrepresentations were material. Since the PTO requires the owner of a trademark to seek registration, it would not have issued a trademark to Warman Jr. if he had revealed that he did not own the mark and was falsely seeking registration for a trademark owned by his father. Further, there is no basis to conclude that Warman Jr.'s misrepresentations to the PTO were the result of a misunderstanding, negligence or a mere omission as Plaintiffs attempt to suggest. It is uncontroverted that Warman Jr. applied for the trademark despite the fact that he knew the mark was owned by his father. Indeed, according to the evidence of record, Warman Jr., who was not the owner of "Chocolate Moonshine Co.," applied for a trademark in order to be a "placeholder" for his father. This was done with his father's knowledge because of [Defendant]

---

[3] Defendants contend that a party must show "culpable conduct" on the part of the losing party, citing *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 47 (3d Cir. 1991). However, that case was abrogated by the Third Circuit in *Fair Wind Sailing*, based on the Supreme Court's holding in *Octane Fitness* allowing for a broader definition of "exceptional."

[4] Because PTO records indicated that the trademark has been cancelled through abandonment, Defendants did not independently seek to have the trademark canceled.

> Falvo's prior conduct and concerns related to what actions she might take. While Plaintiffs contend that, taken alone, this does not demonstrate an intent to defraud the PTO, they have not submitted any evidence that contradicts Warman Jr.'s knowingly false sworn statement to the PTO that he owned the trademark when he admits that he did not. Nor have they created a genuine issue of material fact to suggest that Warman Jr. did not intend to defraud the PTO. Thus, the record evidence demonstrates that this deception was willful and reflects an intent to deceive the PTO into issuing the trademark in the name of Warman Jr.

(ECF No. 159 at 23-24.)

In resisting the award of attorneys' fees, Plaintiffs argue that this case is not "exceptional" because no fraud was committed. Rather, they claim that their actions resulted from a series of honest mistakes and a lack of knowledge. According to Plaintiffs, this includes the fact that Warman Jr., who prosecuted the trademark application without the assistance of an attorney, did not know that he could not apply for a trademark in Chocolate Moonshine Co. because his father was the actual owner of the mark; Warman thought that his son could file for the trademark application and did not know that the registration was void ab initio; and Warman thought that as the trustee of the Trust, he had enforcement rights in the trademark once it was obtained and therefore had a good-faith basis for bringing trademark infringement claims against the Defendants, who were using the trademark without a license.

As it relates to their claims of honest mistakes and lack of knowledge, Plaintiffs have submitted the declarations of Warman and Warman Jr. Among other things, both claim that they "did not know" that only the owner of a trademark can apply for a registration. Plaintiffs' attempt to relitigate this issue is unavailing, however. In fact, Plaintiffs' current position directly contradicts the argument they made in response to the motion for summary judgment, namely, that Warman and Warman Jr. were fully aware of what they were doing and took this action to prevent Falvo from taking the trademark.

5

Plaintiffs' efforts to supplement or change the record as it existed when this issue was resolved is unavailing. The parties had a full opportunity to create a record on this issue.[5] The Court specifically found that Plaintiffs' deception was willful and reflected an intent to deceive the PTO into issuing the trademark in the name of Warman Jr. This finding cannot be relitigated by opposing a motion for attorney's fees after final judgment has been entered. *See Davis v. Stratton*, 2009 WL 1292829, at *1 n.2 (N.D.N.Y. May 7, 2009) (the court noted that in its response to a motion for attorney's fees, "the City is attempting to relitigate whether judgment should have been entered against the City. The appropriate forum for this argument is on appeal.")

Plaintiffs also contend that they did not litigate this case in an unreasonable manner because there were no real discovery disputes. *See Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, 2019 WL 1397387, at *4 (D.N.J. Mar. 28, 2019) ("examining the 'totality of the 'circumstances' surrounding this unique case—a protracted, contentious family dispute—suggests that the gap in the parties' litigating positions was not nearly as great as Defendants contend.") However, as previously discussed, the Court rejects Plaintiffs' assertion that discovery "revealed an honest mistake of complex trademark law—not unreasonable or baseless prosecution of litigation." (ECF No. 454 at 4.)[6]

According to Plaintiffs, they "initially thought to bring a claim for common law trademark infringement, but ultimately did not pursue infringement of their common law rights in the CHOCOLATE MOONSHINE CO. trademark. Plaintiffs mistakenly selected the wrong mechanism to enforce their trademark rights but attempting to enforce their rights in the CHOCOLATE MOONSHINE CO. trademark was not an unreasonable litigation position." (*Id.* at

---

[5] Warman submitted a declaration in support of Plaintiffs' opposition to Defendants' motion for summary judgment (ECF No. 136 Ex. 1), but it did not address the issue of fraud on the PTO.

4-5.) While both the Complaint and Amended Complaint were filed on Plaintiffs' behalf by the Webb Law Firm, counsel experienced in trademark law, Plaintiffs' inexplicably blame the selection of claims on Attorney Michael Betts, who did not enter his appearance for Plaintiffs until December 2021, on the ground that he is "not a trademark attorney" (*id.* at 5 n.4).[7] Mr. Betts did not prepare the Complaint or Amended Complaint, however. Whether The Webb Law Firm was aware of the circumstances of the PTO application is not known, but Warman and Warman Jr. certainly were. Thus, the trademark claims asserted in Counts III and V were unreasonable.

That leaves Warman's claim that because he did not learn until after Defendants' summary judgment was granted that Mr. Betts is not a trademark attorney, he was not made aware that the trademark was void ab initio. In his declaration, Warman states that:

> I originally hired an intellectual property attorney, John Thomas, to protect me. He filed the complaint in Federal Court in 2019. He left in or about 2021 to become counsel at a publicly traded corporation. The Defendants were using my Chocolate Moonshine brand selling counterfeit fudge all over the country. I then hired attorney Michael Betts. I did not learn until after summary judgment that attorney Michael Betts was not a trademark attorney. He informed me of this after summary judgment stating this is out of my wheelhouse and we should have had a trademark attorney helping us, he said you need to hire one right away. I then was able to hire intellectual property trademark attorney Gwen Acker Wood to provide assistance in the trademark and copyright areas.

(Warman Decl. ¶ 4) (ECF No. 454 Ex. 2).

As noted above, this lawsuit was commenced by John Thomas and Anthony Brooks of The Webb Law Firm, both of whom are IP attorneys. They signed the Complaint and Amended Complaint, both of which asserted claims of trademark infringement. After they withdrew in October 2021, Mr. Betts entered his appearance for Plaintiffs on December 20, 2021. Ms. Acker Wood, an experienced IP attorney, entered her appearance on July 21, 2022.

---

[7] This issue is discussed more fully below.

As confirmed by the docket in this case, Warman's assertion that Ms. Acker Wood was not retained until after Defendants' motion for summary judgment was decided is simply wrong. Warman's sworn statement that Mr. Betts told him after summary judgment that they "should have had a trademark attorney helping us" is also belied by the record. Plaintiffs' brief in opposition to the summary judgment motion was signed by both Mr. Betts and Ms. Wood. The brief includes an extensive discussion of why Plaintiffs did not believe they had committed fraud on the PTO (ECF No. 132 at 11-14).[8] Warman's statement that he did not learn until after summary judgment that Mr. Betts was not a "trademark attorney," although questionable, is not completely foreclosed by the record, but ultimately, it does not matter in this case because Ms. Acker Wood was also representing Plaintiffs at the time.

Thus, Plaintiffs were represented by IP counsel when they filed the trademark infringement claims at issue; Plaintiffs were represented by IP counsel when they responded to a motion for summary judgment challenging these claims; and Plaintiffs' response to the motion for summary judgment fully addressed the contention that the trademark was obtained by fraud on the PTO.[9] Simply put, Plaintiffs' attempt to blame Mr. Betts for the assertion of the trademark claims or the manner in which they were defended is unavailing.

---

[8] Plaintiffs argued that there is a distinction between "a 'false' representation and a 'fraudulent' one, the latter involving an intent to deceive, whereas the former may be occasioned by a misunderstanding, an inadvertence, a mere negligent omission, or the like." (ECF No. 132 at 12 (quoting *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009)). But their explanation that Warman Jr. applied for the trademark because "he and Mr. Warman were trying to protect the trademark from being taken by Falvo in connection with Falvo's and Christopher Warman, Sr.'s divorce proceeding." (ECF No. 133 at 14) addressed the issue of motive (why Warman Jr. submitted a false statement to the PTO), not intent (whether he did so knowingly or by mistake).
[9] Moreover, Plaintiffs' implication that only a "trademark attorney" is capable of responding to the argument that a mark was obtained by fraud on the PTO is unpersuasive.

As established by the record, Plaintiffs submitted two claims of trademark infringement when they knew or should have known that such claims could not be prosecuted because the mark was obtained by fraud on the PTO. They continued to maintain this position even when confronted with this fact in a motion for summary judgment. Now, when faced with a motion for attorneys' fees based on their litigation conduct, they attempt to rewrite history and place the blame on Attorney Betts, who successfully obtained a verdict in their favor on the trade secret misappropriation claims at trial.

The Court concludes that Defendants have demonstrated that because this case is "exceptional," the award of attorney's fees to Defendants as the prevailing parties on the trademark infringement claims is warranted.

### C. Copyright Act

In Counts XII and XIII, Plaintiffs alleged that Defendants infringed on a copyright allegedly held by Warman Jr. in twelve photographs taken by photographer Michael Fornataro ("Fornataro"). Defendants moved for summary judgment on the ground that Plaintiffs had no good-faith basis to assert these copyright infringement claims because the only reason that Defendant Griffin, Warman Jr.'s business partner, thought that he had the right to use these photos is because Warman and Warman Jr. allowed him to believe this was true.

In its opinion, the Court stated that:

> Warman Jr. testified that the purpose of the photos was to sell fudge through Chocolate Moonshine Online, the LLC formed by Warman Jr. in December 2016, and was also to be used by Chocolatier at shows and other places. He testified he permitted Griffin to use the photos displayed on the Chocolate Moonshine website in order to sell fudge through Chocolatier and believed that he had the right to do so. He does not recall ever telling Griffin that the photos were taken for his father's company or that Griffin was not permitted to use them. Griffin believed that the photos were owned by Online or Warman Jr.

(ECF No. 159 at 27.) Further, as indicated by the Court:

9

> The August 2019 cease and desist letter relates to use of the Chocolate Moonshine mark and makes no reference to the photographs that Fornataro licensed to Warman Jr. Even assuming that Warman, as opposed to Warman Jr., had a right to the photos, Warman testified that he gave Warman Jr. permission to use the photos for the sale of fudge by Chocolatier for "the entire time until [Griffin] took over the business." Further, if his son wanted to use the photos in a "Chocolate Moonshine shop," he could do so. Warman Jr. continued to be associated with Chocolatier until December 31, 2019, when he sold his interest to Griffin. Thus, between May 2016 through at least December 31, 2019, Warman Jr. had permission to use the photos.
>
> There is no evidence that Griffin was told by Warman or Warman Jr. *at any time* not to use the photos.

(*Id.* at 27-28) (footnote and record citations omitted). The Court then concluded that:

> The Amended Complaint alleges in Count XIII that Griffin and Chocolatier used the photos without authorization by copying them from Moonshine's website, and further, that Falvo, Local Yokels and Konieczny copied the photos from the website and other places and provided them to Griffin and Chocolatier. The uncontroverted evidence fails to support this claim. In fact, Griffin and Chocolatier had authorization from Warman Jr., who supplied the photos for their use. There is no evidence in the record that it was Falvo, Local Yokels or Konieczny who provided them to Griffin or Chocolatier. Therefore, Griffin and Chocolatier are entitled to judgment in their favor on Count XIII.

(*Id.* at 28.) Similarly, the Court concluded that Plaintiffs had no evidence to support the contributory copyright infringement claim in Count XII. (*Id.* at 29.)

Unlike the Lanham Act, the Copyright Act does not require a prevailing party to demonstrate that a case is "exceptional" in order to recover attorney's fees. Rather, fees are a matter for a court to decide in its discretion under the totality of the circumstances.

The Supreme Court has recognized that a court may award attorney's fees "to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 209 (2016).

Defendants argue that the copyright claims were asserted in bad faith based on Warman Jr.'s misrepresentation to Griffin that he owned the copyright in the photographs and could donate

10

them to sell fudge by the company that he and Griffin organized for that purpose. Griffin reasonably believed that Warman Jr. owned the photographs because Warman and Warman Jr. led him to believe this was true.

In response, Plaintiffs note that, in March 2020, Fornataro entered into a Copyright Assignment Agreement transferring the right to use the photos to the Trust, including the right to sue for "past, present and/or future infringement of the copyright." They contend that Warman Jr. did not have the right to grant Griffin the ability to use the photos in the first instance because "a non-exclusive license holder cannot assign the license unless expressly authorized to do so." (ECF No. 454 at 5) (quoting *Ariel (UK) Ltd. v. Reuters Grp. PLC*, 2006 WL 3161467, at *6 (S.D.N.Y. Oct. 31, 2006)), *aff'd*, 277 F. App'x 43 (2d Cir. 2008).[10]

Remarkably, Plaintiffs argue that "[e]ven though [they] did not raise this argument at the Summary Judgment stage [sic] does not affect whether the claim was frivolous." (ECF No. 454 at 6.) However, their failure to raise this argument in response to the motion for summary judgment precludes them from attempting to relitigate the issue of whether they could pursue copyright infringement claims. The uncontroverted record submitted to this Court in the context of Defendants' motion for summary judgment established that Plaintiffs had no support for their copyright infringement claims but pursued them anyway.

Therefore, based on Defendants' degree of success on the copyright infringement claims, the objective unreasonableness of these claims and Warman's apparent improper motivation in bringing these claims, Defendants have demonstrated that an award of attorney's fees in this case is appropriate.

---

[10] While claiming that they merely made a series of "honest mistakes," Plaintiffs try to place a higher standard on Griffin, asserting that he "failed to conduct due diligence regarding whether he had the right to use the photographs." (ECF No. 454 at 5.)

D.  Fees and Costs

Attached to Defendants' motion is a declaration of Attorney Stanley Stein. Among other things, he includes a summary of his more than 53 years of litigation experience and practice, his hourly rates and those of his colleagues, the nature of his legal services, information from the 2020 Real Rate Report, which is a survey of national hourly rates for intellectual property litigation and attorneys with certain levels of litigation experience, and how the fees incurred by Defendants were calculated related to the claims at issue. His declaration includes various exhibits, including his resume, invoices reflecting costs incurred, the national survey, and a chart which sets forth all services provided, the date of each service, the timekeeper and his hourly rate, the time spent on each task and the amount incurred and sets forth costs. The chart separates, where applicable, work performed on the trademark and copyright claims.

Based upon the declaration and its exhibits, Defendants calculate their attorneys' fees and costs as follows:

For the trademark infringement claims, $100,435.23 in legal fees and $2,671.93 in costs.

For the copyright infringement claims $67,480.48 in legal fees and $3,532.00 in costs. (ECF No. 425 Ex. 1.)

Plaintiffs have not challenged or responded to Defendants' fee and cost calculations, other than to request that, if the Court awards attorneys' fees on either the trademark infringement or copyright infringement claims but not both, Defendants should be required to distinguish the fees incurred for each kind of claim. (ECF No. 454 at 7.) In fact, as noted above, Defendants did distinguish the fees incurred for each kind of claim. (ECF No. 425-2.) And as explained above, the Court is granting Defendants' motion for attorney's fees on both the trademark infringement and copyright infringement claims.

As Defendants note, a fee award should be based on hours spent performing work that is the type usually necessary to secure the final result. *Planned Parenthood of Cent. N.J. v. Attorney Gen. of State of N.J.,* 297 F.3d 253, 266 (3d Cir. 2002). The lodestar approach is appropriately used to examine the reasonableness of total billings in this matter. *See Student Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179 (3d Cir. 1995). This is the product of the hours reasonably expended and the hourly billing rate for the legal services rendered. *Id.; see also Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). Assessing the reasonableness of a fee request required an analysis of the information that is submitted to support the work performed, the hours expended in that work and the hourly rate. *Id.*

As required, the Court has reviewed Attorney Stein's declaration and exhibits. It has reviewed each billing entry, including the nature of the service performed, the time spent in doing so, the professional who performed the work and the hourly rates for each such service. Based upon this review, it concludes that the services and time spent on this case, as well as the costs incurred, were reasonable and appropriate.

Therefore, the fees and costs sought by Defendants will be awarded.

**III.  Conclusion**

For the reasons set forth herein, Defendants' Motion for Counsel Fees Pursuant to Fed. R. Civ. P. 54 will be granted.

An appropriate order will follow.

Dated: April 16, 2025                                        BY THE COURT:

                                                             s/Patricia L. Dodge
                                                             PATRICIA L. DODGE
                                                             UNITED STATES MAGISTRATE JUDGE