IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER M. WARMAN, et al., | ) |
| Plaintiffs, | ) Civil Action 19-1224 |
| vs. | ) Magistrate Judge Patricia L. Dodge |
| LOCAL YOKELS FUDGE, LLC, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiffs Christopher M. Warman ("Warman"), the Trust for Family of Christopher Warman (the "Trust") and Chocolate Moonshine, LLC ("Moonshine LLC") brought this action against Defendants Local Yokels Fudge, LLC ("Local Yokels"), Christine Falvo ("Falvo"), Charles Brian Griffin ("Griffin"), Donald Konieczny ("Konieczny") and CM Chocolatier, LLC ("Chocolatier"). The Amended Complaint asserts various federal and related state-law claims arising out of Defendants' alleged use of Plaintiffs' recipe for making fudge, which Plaintiffs claimed to be a trade secret. A jury trial resulted in a verdict for Plaintiffs, as described below.

Defendants have filed a Motion for a New Trial (ECF No. 442). For the reasons below, their motion will be denied.

I.   **Relevant Background**

Plaintiffs commenced this action in September 2019 and filed an Amended Complaint on August 27, 2020 (ECF No. 51). On December 27, 2022, Defendants' motion for summary judgment was granted with respect to Plaintiffs' trademark and copyright infringement claims and denied in all other respects (ECF Nos. 159, 160).

Prior to the commencement of the jury trial, Defendants filed a motion in limine (ECF No. 262) related to a Final Equitable Distribution Order of Court by Consent issued on October 16,

2019 by the Court of Common Pleas of Allegheny County ("Consent Order"). Plaintiffs filed a response in opposition to the motion in limine on November 24, 2023 (ECF No. 268).

The Consent Order terminated the marriage between Plaintiff Warman and Defendant Falvo. The nine-page order addresses and resolves a number of matters between them. In one such matter, and as part of the equitable distribution of assets, Falvo agreed that "without admitting that there is a protectable trade secret or that she has a claim to any such secret, [she] waives any claim she may have to Husband's pre-marital fudge recipe and any increase in value thereof." (ECF No. 464 Ex. 1 § I(C).)

Defendants argued in their motion in limine that Plaintiff should be prohibited "from asserting at trial the Final Equitable Distribution Order for any purpose, including for the purpose of challenging Defendant Christine Falvo's ownership of the alleged trade secret recipe." (ECF No. 262 at 5.) Among other things,[1] Defendants contended that the Consent Order was unenforceable because Warman had failed to fulfill his obligation to purchase a life insurance policy naming Falvo as the primary beneficiary. (ECF No. 464 Ex. 1 § I(B)(2).)

During a conference just before the trial began on November 27, 2023, the Court stated that it was denying the motion in limine because, among other things, the Consent Order was "an Order of Court, not an agreement, and, therefore, if there was any claim breached, the proper remedy would be to file a motion for sanctions, a motion to enforce or some other document in the

---

[1] Defendants also claimed that they only learned of Plaintiff's intent to raise the issue of waiver "days before trial." According to Defendants, if the waiver issue had been raised earlier, they could have "asserted and sought discovery regarding a defense of failure of consideration, unclean hands and/or unjust enrichment" because of Warman's failure to obtain the insurance policy. (ECF No. 262 at 4 ¶ 18.) Defendants' claim of resulting prejudice is difficult to sustain at best given that Falvo has been aware of the existence and terms of the Consent Order since it was issued in 2019, and Defendants referenced it in Paragraph 151 of their Counterclaims. (ECF No. 94 at ¶ 151.) They also identified the Consent Order as a trial exhibit in their Pretrial Statement. (ECF No. 190-1 Ex. 172.)

Family Division." (ECF No. 352 at 8.) *See also id.* at 12 ("It's an Order of Court, correct, and the remedy for an Order of Court, whether it's a Consent Order or not is to go back to the Court to enforce."). The order denying the motion in limine was noted on the record the next day. See ECF No. 272 (text order "denying 262 Motion in Limine for an order prohibiting Plaintiffs from asserting at trial that Defendant Falvo has waived any claim to the alleged trade secret recipe for the reasons stated on the record.")

Later in the same conference, Defendants' counsel asked whether he would be permitted to raise the fact that Warman did not purchase the life insurance policy, and the Court stated that: "Raising the issue on the failure to procure a life insurance policy since it was the subject of court proceedings, you are not permitted to raise." (ECF No. 352 at 19.) At the same time, the Court stated that if Falvo "wants to try and explain why she thinks she has the right to use the trade secret, she can." (*Id.* at 21.) Falvo did, in fact, testify during the trial.

Defendants note that, in his closing argument, Plaintiffs' counsel referred to the waiver provision, stating that: "We all know that in 2019 as part of the divorce proceeding, Ms. Falvo relinquished any right that she had in the trade secret recipe. . . . It's a document signed by Ms. Falvo as a consent order issued by the Court. She expressly waived any right to the trade secret." (ECF No. 464 Ex. 5 at 27-28.)

At the conclusion of the trial, the jury rendered a verdict and awarded damages in favor of Plaintiffs and against Falvo, Konieczny, and Local Yokels with respect to the trade secret misappropriation claims and against Chocolatier on the unjust enrichment claim. (ECF No. 288).

Defendants filed the pending motion on December 27, 2024 (ECF No. 442), and it has been fully briefed (ECF Nos. 443, 464, 472).[2]

## II. Standard of Review

Under Rule 59(a)(1)(A), after a jury trial, the court may grant a new trial on all or some issues as to any party. Rule 61 further provides that:

> Unless justice requires otherwise, no error in admitting or excluding evidence--or any other error by the court or a party--is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Fed. R. Civ. P. 61.

Thus, in resolving a motion for a new trial based on an evidentiary ruling "a District Court must first determine whether an error was made during the course of the trial, and then determine 'whether that error was so prejudicial that refusal to grant a new trial would be "inconsistent with substantial justice."'" *Bogaski v. County of Allegheny, Pa.*, 2018 WL 1471977, at *1 (W.D. Pa. Mar. 26, 2018) (quoting *Bhaya v. Westinghouse Elec. Corp.*, 709 F. Supp. 600, 601 (E.D. Pa. 1989), *aff'd*, 922 F.2d 184 (3d Cir. 1990)).

A new trial is an extraordinary form of relief. *See Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168, 181 (3d Cir. 2020). As the Court of Appeals has stated, "the district court's latitude on a new trial motion is broad when the reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court, *e.g.* evidentiary rulings. . . ." *Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993). (citation omitted).

---

[2] Following the trial, the parties engaged in various motions practice related to Plaintiffs' request for a permanent injunction and engaged in multiple settlement discussions with the Court. As a result, and with the parties' consent, judgment on the jury's verdict was not entered until December 2, 2024 (ECF No. 423). Defendant Rule 59 motion was timely filed within 28 days of the judgment. Fed. R. Civ. P. 59(b).

4

## III. Discussion

Defendants contend that the Court's ruling that the Consent Order was not a contract represents reversible error. They maintain that the Consent Order was, in fact, a contract and as a result, they should have been permitted to present evidence that Warman materially breached one of its terms.

The Court acknowledges that Defendants' position that the Consent Order is a contract is correct, *see Commonwealth by Shapiro v. UPMC*, 647 Pa. 198, 214, 188 A.3d 1122, 1131 (2018) ("A consent decree is a judicially sanctioned contract that is interpreted in accordance with the principles governing all contracts.") Regardless, the Court did not err by denying Defendants' motion.

As Defendants assert in their motion for a new trial, their intent was to obtain a decision that the Consent Order is unenforceable.[3] Notably, however, Plaintiffs did not seek to enforce the Consent Order at the trial.[4] Indeed, had this been their intent, they could have moved to preclude Falvo from testifying that she had any claim to the trade secret recipe, but they did not (or to the extent that they did, this request was denied). *See* ECF No. 352 at 14-15 (at the conference, the Court informed Plaintiffs' counsel that "I'm going to allow you to impeach her . . . if you choose

---

[3] At trial, Defendants proposed a more limited remedy that would consist solely of Falvo being relieved of her agreement to waive any claim to the fudge recipe because of Warman's failure to comply with his obligation to buy an insurance policy. They do not explain how this selective elimination of certain unrelated duties in the Consent Order, while presumably retaining all of the remaining rights and duties, is a proper application of contract law. Moreover, it is telling that Defendants do not discuss the ramifications of declaring the entire final equitable distribution between the parties and all other terms of the Consent Order unenforceable. And at no point since this lawsuit began in 2019 did Defendants seek any such relief even though Falvo's use of a fudge recipe has been an issue since its outset.

[4] Defendants argue that "Warman *essentially* alleges that Falvo breached the Consent Order." (ECF No. 443 at 8.) But Warman did not argue that Falvo breached the Consent Order, nor did he seek any relief in this Court for an alleged breach.

Case 2:19-cv-01224-PLD   Document 481   Filed 04/22/25   Page 6 of 9

to do so about any ownership rights that she claims to have had or has now but I am not going to remove her entirely based on your suggestion.") Rather, because Falvo asserted that she had a claim to the fudge recipe Defendants were using, Plaintiffs could impeach her by confronting her with a potentially inconsistent statement in § I(C) of the Consent Order.[5]

As the Court noted during the trial, the Consent Order was a valid order of court until declared otherwise. With respect to Defendants' assertion that a new trial is warranted because they were not permitted to offer evidence of Warman's breach, the provisions of the Consent Order are instructive. The Consent Order explicitly provides that if either party defaults in the performance of an obligation, "the non-defaulting party shall have the right to sue for enforcement, specific performance, or damages for the breach of this [Consent Order.]," or to utilize the enforcement provisions of the Pennsylvania Divorce Code. (ECF No. 464 Ex. 1 § VII.) Notably, although she claims that Warman defaulted in his obligation to buy a life insurance policy naming her as the primary beneficiary, Falvo did not bring an action or initiate any proceeding to enforce Warman's duty in this Court or in any other court before the start of the trial. Similarly, Warman did not seek to enforce the Consent Order regarding Falvo's waiver prior to trial. And no court has held that Warman breached the Consent Order by failing to purchase the life insurance policy.[6]

Despite failing to assert any claim concerning Warman's alleged breach of the Consent Order at any time prior to trial, Defendants inexplicably suggest that in addition to the claims

---

[5] Contrary to Plaintiffs' statement in their closing argument, Falvo did not admit that there was a protectable trade secret. Rather, the Consent Order provides that she waived any claim she may have to Warman's "pre-marital fudge recipe." Defendants did not object to this remark, and as discussed herein, they had every opportunity to present relevant evidence to refute the existence of a trade secret, and related matters, during the trial.

[6] In their response, Plaintiffs argue in the alternative about various issues related to Warman's obligation to purchase a policy and Falvo's failure to comply with another provision in the Consent Order. Defendants dispute Plaintiffs' assertions. The Court need not and will not wade into the weeds of this dispute, which is irrelevant to the matters at hand.

6

actually asserted in this case, the jury should have been asked to determine whether Warman "breached his obligations under the Consent Order, materially breached that contract, and relieved Falvo of her obligations (including a purported waiver of the recipe)."[7] (ECF No. 472 at 5.) Even if Warman breached a term of the Consent Order, however, Defendants have failed to establish that Falvo was no longer bound by her promise to waive any claim to the pre-marital fudge recipe. The Consent Order does not provide that these two specific terms are intertwined or related, and there is nothing in the Consent Order that states, let alone implies, that a breach by Warman relieves Falvo of this specific obligation while at the same time preserving all other terms in the nine-page Consent Order. As provided in the Consent Order, in the event of a breach, the non-breaching party may sue to enforce its terms.

Defendants have failed to justify why they would be entitled to a trial within a trial under these circumstances. Nor have they addressed the potential prejudice to Plaintiffs if the jury were asked to determine the enforceability of the Consent Order in the absence of a breach of contract claim or any prior notice that Defendants intended to seek to void the Consent Order.

Defendants have failed to demonstrate that the Court committed an error when it denied their motion in limine on the merits. Whether Falvo waived any claim to the fudge recipe or had a right to use it is highly relevant in connection with Plaintiffs' trade secret misappropriation claim. By marked contrast, whether Warman purchased an insurance policy for the benefit of Falvo or indeed, whether both parties complied with their respective obligations under the Consent Order, has no bearing on any of the issues here. Therefore, while the Court acknowledges its error in misconstruing the nature of the Consent Order, it is not grounds for granting a new trial and did

---

[7] This statement also appears to be inconsistent with Defendants' assertion that the entire Consent Order is unenforceable.

not affect Defendants' substantial rights in any way.

Even if allowing Plaintiffs to reference the waiver provision while barring Defendants from introducing evidence about Warman's failure to purchase an insurance policy represented error, however, Defendants have failed to show that it represented *prejudicial* error. In fact, it would be harmless error. Falvo had a full and unfettered opportunity to testify at trial about why she believed she had a right to the fudge recipe she used in her business. Moreover, Defendants contended at trial and presented evidence for the jury's consideration both that Plaintiffs' recipe was not a trade secret and that they were not using the same recipe. *See, e.g.,* ECF 290, Ex. 20 (Recipe Comparison between Trade Secret Recipe and Local Yokels Recipe).

Unlike Warman's alleged failure to buy an insurance policy, Falvo's waiver of any claim to Warman's "pre-marital fudge recipe" was directly relevant to, while not dispositive of, Plaintiffs' claim that Falvo and others misappropriated Plaintiffs' trade secret recipe. And because the Consent Order was in full force and effect at the time of trial, Plaintiffs had a right to reference *relevant* portions of it.

Defendants argue that if evidence had been admitted that Warman failed to buy an insurance policy had been admitted, "the jury could have found that Warman breached his obligations under the Consent Order, materially breached that contract, and relieved Falvo of her obligations (including a purported waiver of the recipe), which very well could have resulted in a completely different verdict in this case." (ECF No. 472 at 5.) Even if one could accept Defendants' unsupported premise that it would have been appropriate to litigate the enforceability of the Consent Order at trial, Defendants offer only rank speculation about the possibility of a different outcome. To grant a new trial based only on such speculation is "inconsistent with substantial justice."

"A new trial is extraordinary relief which should be granted only where extraordinary justifying circumstances are present." *Kengerski v. County of Allegheny*, 2022 WL 17668800, at *1 (W.D. Pa. Dec. 14, 2022) (quoting *Bistrian v. Levi*, 517 F. Supp. 3d 335, 345 (E.D. Pa. 2021)). Defendants have failed to show that they are entitled to such relief.

**IV.    Conclusion**

For all these reasons, Defendants' Motion for a New Trial (ECF No. 442) will be denied.

An appropriate order will follow.

April 22, 2025                                       BY THE COURT:

                                                                     s/Patricia L. Dodge
                                                                     PATRICIA L. DODGE
                                                                     UNITED STATES MAGISTRATE JUDGE